# SUN SHIPBUILDING & DRY DOCK COMPANY, Petitioner,

v.

**Leo McCABE, Stanley J. Czukiewski, John J. April, Rutherford H. Pickett, Henry J. Malinowski, John A. Ceci, Joseph W. Bonkowski, Teddy W. Klecko, Frank J. Sabot, Director, Office of Workers' Compensation Programs, Department of Labor, and Benefits Review Board, Department of Labor, Respondents.**

## No. 78–1389.

United States Court of Appeals, Third Circuit.

Argued Dec. 12, 1978.

Decided Feb. 22, 1979.

John J. Runzer, Jeffrey C. Hayes, Alan K. Cotler, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for petitioner.

Carin Ann Clauss, Sol. of Labor, Laurie M. Streeter, Associate Sol., Joshua T. Gillelan, II, Atty., U. S. Dept. of Labor, Washington, D. C., for respondents.

Before GIBBONS, VAN DUSEN and ROSENN, Circuit Judges.

## OPINION OF THE COURT

MAX ROSENN, Circuit Judge.

We have before us a petition for review of decisions rendered by the Benefits Review Board of the United States Department of Labor affirming compensation awards under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901, *et seq.* (LHWCA). Nine former employees of Sun Shipbuilding & Dry Dock Co. ("Sun Ship") filed claims for compensation pursuant to LHWCA in 1972. Each alleged a progressive hearing loss as a result of work-related conditions at Sun Ship.

The cases were consolidated and a combined hearing was held before an administrative law judge ("ALJ") in 1974. The ALJ in granting compensation to the claimants under the Act made four rulings which were affirmed by the Benefits Review Board ("BRB") and form the basis of this appeal.

First, the ALJ ruled that although symptoms of hearing loss had been experienced by each claimant prior to 1972, the Act's one-year statute of limitations did not bar recovery. The ALJ determined that the effective "date of the injury" for the occupational disease was when the claimants were first advised of the impairment by their physician in mid-1972. In addition, the ALJ ruled that the statute of limitations had not begun to run because of Sun Ship's failure to file a report within ten days of becoming aware of the claimant's injury as required under section 930(a) and (f) of the Act. The ALJ found that the employer was aware of the occupational disease from which the claimant had been suffering since as early as 1969 and no report was ever filed.

Second, the ALJ decided that the claimants' failure to give notice to the employer within 30 days of the injury as required by the Act was excused because, as stated above, Sun Ship was aware of the claimants' disease. In addition, the ALJ believed that Sun Ship was not prejudiced by the failure to give notice.

Third, the ALJ determined that loss of hearing was a "scheduled loss" entitling claimants to compensation under the Act without proof of decreased wage earning capacity.

Fourth, the ALJ did not reduce the compensation award in consideration of the degree of hearing loss that was the result of work on land or non-work related stimuli.

The Benefits Review Board affirmed the finding of liability, but, having found the audiometric data relied on by the ALJ to be unreliable, reversed and remanded the issue of damages. On remand, the ALJ recalculated damages, but refused to make an apportionment for non-occupational factors. On appeal, the Benefits Review Board affirmed. Sun Ship has petitioned for review of both Benefits Review Board decisions. Because we believe these claims are barred by the statute of limitations and the notice provision of the Act, we will limit our decision to those issues.

## I. SCOPE OF REVIEW

Before considering the substantive claims raised by the petition, we will analyze the

review provisions of the Act. A disputed claim for compensation is first heard before an ALJ. The ALJ makes findings of fact and determines the validity of the claim. 33 U.S.C. § 919. The losing party may appeal to the BRB which reviews the ALJ's decision but it does not make any independent findings of fact. 33 U.S.C. § 921. The statute provides for the BRB's scope of review: "The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3).

█ A dissatisfied litigant may then file a petition for review of the BRB decision in the United States court of appeals. 33 U.S.C. § 921(c). The statute does not set forth the standard of review to be applied in the court of appeals. Case law has established, however, that this court is to review the decisions of the Benefits Review Board for errors of law, and to make certain that the BRB adhered to its scope of review provision. *Sun Shipbuilding & Dry Dock Co. v. Walker*, 590 F.2d 73, 76 n.12 (3d Cir. 1978); *Director, OWCP v. Universal Terminal & Stevedoring Corp.*, 575 F.2d 452, 454 (3d Cir. 1978); *Presley v. Tinsley Maintenance Service*, 529 F.2d 433 (5th Cir. 1976).

█ The Director's brief suggests that the court of appeals should not independently review the substantiality of the evidence supporting the ALJ's decision, but it should limit review to the question of whether the Board's substantial evidence determination is "irrational" or "lacks a reasonable legal basis." The cases cited by

the Director, however, do not support this constricting contention.

It is true that this court does not determine if the Board's decision is supported by substantial evidence; we review the Board's determination of whether the ALJ's decision is supported by substantial evidence.[1] In order to determine whether the Board has properly adhered to its scope of review, the court of appeals must make an independent review of the record and decide whether the ALJ's findings are supported by substantial evidence. This we must do even if the court would reverse the Board only for an "irrational" determination. In each of the cases in which an evidentiary question has been posed, the court of appeals has undertaken this task. *See, e. g., Atlantic & Gulf Stevedores, Inc. v. Director, OWCP*, 542 F.2d 602 (3d Cir. 1976). In none of the cases, did the court give as much deference to the Board's determination as is suggested by the Director in the instant case. For example, in *O'Keeffe v. Smith, Hinchman & Grylls Associates*, 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965), relied on by the Director, the Court stated:

> The rule of judicial review has therefore emerged that the inferences drawn by the Deputy Commissioner [now ALJ] are to be accepted unless they are irrational or "unsupported by substantial evidence on the record . . . as a whole."

*Id.* at 362, 85 S.Ct. at 1014 (emphasis supplied), *see Atlantic & Gulf Stevedores, Inc. v. Director, OWCP, supra*, 542 F.2d at 608. *See generally Pittston Stevedoring Corp. v. Dellaventura*, 544 F.2d 35, 50 (2d Cir. 1976),

---

1. Review of the Board's determination of whether the ALJ's decision is supported by substantial evidence rather than determining whether the Board's decision is supported by substantial evidence will only lead to a different result under a given set of facts. Suppose the ALJ finds in favor of a claimant based in part on establishing a specific date of injury which is supported by substantial evidence. The BRB reviews the decision and decides that there is substantial evidence to support a finding of an earlier date of injury. (It is possible that substantial evidence could support contrary conclusions.) Suppose the BRB then reverses the ALJ, holding that the claims are

barred by the statute of limitations. If the court of appeals reviewed the BRB decision for substantial evidence it would have to affirm. The proper method of review, however, would disclose that the ALJ's decision was supported by substantial evidence and the Board exceeded its scope of review. The court would reverse the Board's decision and reinstate the ALJ's. This review structure differs from that of other agencies which are permitted to independently determine the facts and which need not defer to the ALJ. *See Presley v. Tinsley Maintenance Service*, 529 F.2d 433, 436 (5th Cir. 1976).

*aff'd sub nom. Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977) (concluding a general discussion on the deference given to Board in different context, Judge Friendly states: "We therefore reject the argument that the BRB's decisions in these cases must be affirmed if they are rational but wrong.")

■ Thus, in this case, the court must review the facts to determine whether there is substantial evidence on the record taken as a whole to support the ALJ's findings. Only in this manner can we determine whether the BRB properly exercised its review function. We agree with the Director's argument, however, insofar as it suggests that in a case where the substantiality of the evidence is a very close question, the Board's decision should be upheld.

## II. STATUTE OF LIMITATIONS

Section 13(a) of the LHWCA contains a limitations period for claims compensable under the Act: "The right to compensation for disability under this chapter shall be barred unless a claim therefore [*sic*] is filed within one year after the injury . . . ." 33 U.S.C. § 913(a).

■ . For an occupational disease, such as loss of hearing, the date of injury may be difficult to ascertain. Thus, the courts developed a rule requiring that two factors coalesce before the date of injury is established. First, " 'the accumulated effects of the deleterious substance [must] manifest themselves,' " *i. e.,* the employee must know he is "injured." *Travelers Insurance Co. v. Cardillo,* 225 F.2d 137, 143 (2d Cir.), *cert. denied,* 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955), quoting from *Urie v. Thompson,* 337 U.S. 163, 170, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) (establishing same requirement under Federal Employer's Liability Act, 45 U.S.C. § 51 *et seq.).* Second, the date of injury will not precede the "date on which

the employee first realized, or should have first realized, that his ailment was job-related." *Sun Shipbuilding & Dry Dock Co. v. Bowman,* 507 F.2d 146, 150 (3d Cir. 1975).[2]

The ALJ held that the date of injury for each claimant was the date he was advised by Dr. Maurice Saltzman in August or September 1972 that his hearing loss was work-related. Because the claims were filed in October 1972, the ALJ held that they were not barred by Section 13(a). This determination, however, was based on an erroneous understanding of the law.

In setting the date of injury in mid-1972, the ALJ noted "that the effect of the occupational disease must manifest itself to a physician rather than to an unschooled employee. [*Aerojet-General Shipyards, Inc. v. O'Keeffe,* 413 F.2d 793 (5th Cir. 1969).]" This aspect of *Aerojet,* however, was explicitly rejected by this Circuit in *Sun Shipbuilding & Dry Dock Co. v. Bowman, supra,* 507 F.2d at 149. Although a physician telling an employee that his injury is work-related establishes a date no later than which the employee knows this fact, it does not exclude the possibility that the employee should have known of the relationship of the injury to employment prior to that date.

The ALJ, however, did not rely exclusively on *Aerojet.* He also stated: "In any event the record is void of substantial evidence that would support a conclusion that the Claimant was intelligently aware that he was afflicted by the insidious occupational impairment of a degree of hearing loss until he was so advised by his physician . . . ." The BRB affirmed this finding holding "that there is nothing in the record which conclusively establishes that the claimants were aware of any causally related occupational hearing loss until they were informed by a physician."

---

**2.** The rule has been incorporated into the statute by the 1972 amendments: "The time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment." 33

U.S.C. § 913(a) (1976). As recognized by the ALJ, because the injuries in this case occurred prior to the effective date of the amendments, this suit is governed by the pre-amendment statute. *Addison v. Bulk Food Carriers, Inc.,* 489 F.2d 1041 (1st Cir. 1974).

As we pointed out above, the appropriate test for date of injury is not subjective, but objective, *i. e.* when the claimants *should have been* aware of the relationship between hearing loss and the job. As a result of applying the wrong test, the ALJ failed to make certain findings critical to a proper determination of this issue. A remand is unnecessary, however, because the evidence on the record compels the result in this case.

The first question to be addressed is: at what point did each claimant first realize he was suffering from a hearing loss? On this issue, the ALJ said simply that "there had been some previous symptoms experienced or noted" by each claimant. Dr. Saltzman, who examined these employees, testified that he asked each one how long he had been suffering from a hearing impairment. Their responses fell in a range of six or seven years to thirty years prior to filing the claim. This evidence, however, was contradicted by the testimony given by the individual claimants. Because we are reversing the claimants' awards and the ALJ did not make a finding on this issue, we are compelled to construe the evidence presented in the light most favorable to the claimants. Thus, we will not rely on the physician's testimony; instead, we base our decision on the testimony given by the claimants. Six claimants testified that they had been aware of losses in hearing for more than a year prior to filing the claims (Czukiewski, Klecko, Malinowski, McCabe, Pickett, Sabot).[3] Three others testified, however, that they had become aware of their hearing deficiencies only within a year prior to filing the claims (April, Bonkowski, Ceci). Thus, we cannot hold that these latter three are barred from asserting their claims by Section 13(a).

As to the six claimants who recognized hearing problems earlier, the second question must be answered: when should they have been aware that the injury was work-related? In making this determination, we are aided by *Sun Shipbuilding & Dry Dock Co. v. Bowman, supra,* a case involving a similar claim:

> While there was no testimony that Avery was ever specifically advised that his hearing loss was job-related, we conclude on the basis of the record that Avery could not reasonably have believed that his hearing problems were due to other causes. He stated that when he visited his family doctor about his hearing problem, he believed that it might be due to an accumulation of wax, but that the doctor informed him that such was not the case. He further testified that the noise on the job hurt his ears and that the safety department at Sun strongly urged all employees, through conspicuously-placed posters and meetings with safety personnel, to wear ear plugs in order to protect their hearing. Avery even admitted that he wore ear plugs on the job for that reason.

507 F.2d at 150.

The record here reveals that each of the claimants was aware of the extensive safety campaign started by Sun Ship in 1969 urging all employees working in noisy areas to wear ear protection. In addition, each claimant testified that he had worn some form of ear protection for more than a year before filing the claim. On this basis, we conclude that these claimants should have known that their hearing losses were work-related since 1969. Thus, the statute of limitations provision serves as a bar to these six claims unless the tolling provision of Section 30(f) is applicable. Sensitive as we are to the personal and social impact of the claimants' injuries, our sympathies are circumscribed by the plain meaning of the Act. *See Sun Shipbuilding & Dry Dock Co. v. Bowman, supra.*[4]

---

3. Czukiewski, Klecko, and Malinowski testified that they were aware of their hearing problems more than two years prior to filing the claims; McCabe and Sabot were aware for more than three years; and Pickett knew of his impairment for twenty-two years.

4. In *Bowman,* we held that "[[t]he] one-year limitation period is mandatory and compliance with it has been termed 'jurisdictional.' " 507 F.2d at 148 n.3. *See Young v. Hoage,* 67 App. D.C. 150, 90 F.2d 395 (1937).

Section 30(f) of the Act provides that when the employer has been given notice or has knowledge of an injury and fails to report it as required under Section 30(a), the statute of limitations does not begin to run until the report is filed. 33 U.S.C. § 930(f). According to the ALJ "the Employer was aware of the adverse affects [*sic*] that the excessive acoustic trauma had upon the sense of hearing of the Claimant at least as early as 1969, about which time the wearing of ear protecting devices were [*sic*] made mandatory, in an effort to reduce the effects of the said trauma, also medical examinations were made." Because the employer had not filed the required report, the ALJ held that the limitation period had not begun to run. This finding was affirmed by the Board.

■ Our review of the record convinces us that this finding is not supported by substantial evidence on the record taken as a whole. The ALJ relied in part on the safety campaign sponsored by Sun Ship to reach his conclusion. We do not believe, however, that an awareness of the general aural hazards at a place of employment is sufficient to put an employer on notice of an injury to a specific employee as required by the Act. *Sun Shipbuilding & Dry Dock Co. v. Bowman, supra,* 507 F.2d at 151.

■ The ALJ also made reference to medical examinations conducted by the employer. We believe he was referring to audiometric tests administered by Sun Ship upon each of these claimants.[5] The Board relied on these tests in affirming the ALJ:

[T]he employer had each of the employees audiometrically tested starting in 1969, and each of the claimants had been working for the employer continuously for at least 15 years. The Board cannot understand how the employer, *having administered these tests revealing hearing losses,*

can deny that he had knowledge of the claimants' hearing impairments. (Emphasis added.)

The fact that the tests were conducted on these employees was stipulated to by the parties. Although the test records were made available to the claimants prior to the hearing, they were never introduced at trial. The stipulated fact that the tests were taken is an insufficient basis to permit the inference to be drawn that the tests reflected hearing losses when the test results were available to the claimants and could have been introduced at trial. Finding no other evidence in the record to support the BRB's decision affirming the ALJ's holding, we must reverse the decision and hold that these six claims are barred by Section 13(a).

## III. THIRTY DAY NOTICE REQUIREMENT

The three claims that survived Section 13(a) (April, Bonkowski, Ceci) must pass an additional time limitation contained in Section 12(a): "Notice of an injury or death in respect of which compensation is payable under this chapter shall be given within thirty days after the date of such injury or death . . . to the employer." 33 U.S.C. § 912 (1970) (prior to the 1972 amendments). The claimants failed to give such notice within thirty days after having become aware of their injuries. The ALJ excused this failure by application of Section 12(d) which provides that failure to give notice will not bar a claim if the employer had knowledge of the injury and was not prejudiced by the failure to give notice.

In Part II of this opinion we held that the employer did not have notice of the injuries until the claims were filed. Thus, the conclusion that Section 12(d) excuses the failure to give notice must be reversed[6] and

---

5. Claimant McCabe testified that he was examined by Sun Ship's doctor after complaining of hearing difficulties in 1968 or 1969. The records of the examination were not introduced into evidence and cannot be considered a basis for showing that Sun Ship had knowledge of the injury. No other evidence of medical ex-

aminations conducted by Sun Ship prior to the claims being filed was presented.

6. Because the provision in § 12(d) excusing the failure to notify is in the conjunctive, it is unnecessary for us to decide whether the employer was prejudiced by the failure to give notice.

the claims of April, Bonkowski, and Ceci are barred.

The petition for review will be granted, and the decisions of the Benefits Review Board will be reversed with instructions that the claims be vacated with prejudice. Each party to bear its own costs.