606 F.2d 53
 CA 79-3658 DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, United States Department of Labor, Petitioner,
v.
UNITED STATES STEEL CORP., Employer, and Michael Baluh,
Claimant, Respondents.
 No. 78-2684.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 4, 1979.
Decided Sept. 28, 1979.
 
 Margaret D. Blough, J. Scott Leckie (argued), Yablonski, King, Costello & Leckie, Washington, Pa., for respondent, Michael Baluh.
 Carin Ann Clauss, Sol. of Labor, Cornelius S. Donoghue, Jr., Acting Associate Sol., Judith E. Wolf, Co-Counsel for Black Lung Benefits, Lee D. Richardson (argued), U. S. Dept. of Labor, Washington, D. C., for Director, Office of Workers' Compensation Programs.
 Before ADAMS, HUNTER and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 PER CURIAM.
 
 
 1
 The Director of the Labor Department's Office of Workers' Compensation Programs petitions this Court for review of a final order of the Benefits Review Board that modified an attorney's fee award by the administrative law judge (ALJ) under the Federal Mine Safety and Health Act.[1] Because the Board should have remanded the matter to the ALJ for further factual findings instead of making its own determination, we conclude that in modifying the attorney's fee award the Board exceeded its scope of review. Accordingly, the order will be set aside.
 
 I.
 
 2
 At a hearing before the ALJ on June 4, 1977,[2] United States Steel Corporation contested a claim by its employee, Michael Baluh, for benefits under the black lung disease provision of the Federal Mine Safety and Health Act. After Baluh's total disability was established, the ALJ ordered United States Steel to pay appropriate disability benefits to Baluh, and $337.50 for legal services rendered in connection with Baluh's claim. The ALJ awarded only half the attorney's fee requested, however, because he believed that the fee proposed would compensate Baluh's counsel at "a rate far in excess of that usually sought by claimant's attorneys in (his) experience with Federal black lung claims."[3] Finding no justification for such a request, the ALJ reduced the proposed rate by half "so that it (would) bear a reasonable similarity to the hourly rates normally proposed for legal services in Federal black lung cases before (him).[4]
 
 
 3
 Both United States Steel and Baluh filed timely appeals with the Board. United States Steel raised several issues, and disputed, in particular, the Board's finding that Baluh was totally disabled. As a result of the passage of the Black Lung Benefits Reform Act of 1977,[5] which relieved employers of liability for the payment of benefits and attorneys' fees for claimants whose employment ended prior to 1970, United States Steel was subsequently dismissed as a party to the proceeding prior to any decision on the merits. In its place, the Board held the Black Lung Disability Trust Fund, an industry-supported fund created by the 1977 Act, liable for the payment of all benefits and fees. The Director of the Office of Workers' Compensation Programs, administrator of the Trust Fund, thereupon replaced the employer as a party in the case.
 
 
 4
 The Director also challenged the Board's decision, but on the ground that the Black Lung Benefits Reform Act limited the Trust Fund's liability to the payment of claimant's benefits. Baluh, on the other hand, contended that the attorney's fee awarded, under the circumstances, was too low, and that the ALJ's award constituted an abuse of discretion. The Board, because it found that it was not authorized by the Act to relieve employers of their obligation to pay a claimant's attorney fees, denied the Director's motion. But in ruling favorably on Baluh's appeal, the Board concluded that the ALJ's failure to discuss counsel's performance in light of relevant factors resulted in an award without support in the record. The Board pointed out that in black lung cases the ALJ is required by regulation to consider the following factors in determining the appropriate attorney's fee:[6]
 
 
 5
 (1) The services performed (including types of services);
 
 
 6
 (2) The complexity of the case;
 
 
 7
 (3) The level of skill and competence required in the rendition of the services;
 
 
 8
 (4) The amount of time spent on the case to the nearest quarter hour;
 
 
 9
 (5) The level of administrative proceedings to which the claim was carried, and the level at which the attorney entered the proceedings;
 
 
 10
 (6) The amount of any fees or reimbursement for expenses previously authorized, paid or requested; and
 
 
 11
 (7) Any other information or data which may be relevant to the amount of fee requested.
 
 
 12
 Having found that the ALJ's determination lacked adequate support in the record, the Board then proceeded to order payment of the originally requested amount of $675 for the attorney's fee.
 
 II.
 
 13
 On appeal from the Board's order, the Director alleges that the Black Lung Disability Trust Fund is not liable for the payment of attorneys' fees, and that in any event the Board exceeded its statutory scope of review[7] when it modified the fee award under the circumstances found here. In a recent decision,[8] rendered subsequent to the filing of this appeal, we concluded that the Trust Fund is liable for the payment of attorneys' fees in cases involving pre-1970 coal mine employment. Consequently, the sole question for our consideration here is whether the Board should have remanded to the ALJ the question of the amount of the attorney's fee for further consideration instead of awarding an amount that it alone deemed appropriate.
 
 
 14
 For the Board to reverse an order by an ALJ determining the amount of an attorney's fee, the party challenging the award must prove that the hearing officer "acted arbitrarily, capriciously or in abuse of his discretion in making the award." Bednarek v. I.T.O. Corporation of Baltimore, BRBS 708, 711 (February 15, 1978). The ALJ's apparent failure to consider the factors relevant to an award of attorney's fees is an important element in such a determination. Here, Baluh argues that if the Board found sufficient evidence in the record to justify its finding that the ALJ abused his discretion, the Board must also have possessed sufficient information to determine for itself what constituted a fair and reasonable fee. We disagree, and find that the Board's modification of the ALJ's award, under these circumstances, exceeded the Board's appropriate scope of review.
 
 
 15
 The Board's scope of review in such cases is limited to ascertaining whether an ALJ's decision and findings are supported by substantial evidence in the record considered as a whole. The Board exceeds this statutory authority when it makes independent factual determinations.[9] If the ALJ erroneously interprets the evidence, his decision is subject to reversal by the Board. The Board reversed the hearing officer in the present proceeding, however, after reviewing a record that failed to disclose consideration by the ALJ of factors relevant to the award of an attorney's fee.
 
 
 16
 In recent decisions upholding attorney's fee awards, the Board has found the ALJ's determinations supported by findings in the record.[10] But when the record has not included specific findings by the ALJ concerning the factors relevant to an attorney's fee award, the Board has directed a remand despite a general statement that such factors were considered.[11] Instead of requiring further analysis by the ALJ in this case, however, the Board ordered not remand but payment of the originally requested fee. Given the absence of sufficient findings in the record in this regard, we believe the Board's action exceeded the appropriate scope of review.[12] Because the Board should have returned the matter for further consideration by the ALJ, we shall set aside the order of the Board,[13] and remand the matter to it for action consistent with this opinion.
 
 
 
 [1]
 30 U.S.C. §§ 901, 902, 921-925, 931, 936-941 (1976)
 
 
 [2]
 Hearings and appeals under the Federal Mine Safety and Health Act are governed by procedures set forth in the Longshoremen's and Harbor Workers' Compensation Act, as amended, 33 U.S.C. §§ 919-921 (1976)
 
 
 [3]
 Appendix at 15
 
 
 [4]
 Id
 
 
 [5]
 30 U.S.C. § 934 (1978)
 
 
 [6]
 20 C.F.R. 720.227(a) (1976)
 Compare the analytical framework this Court has developed to be used by trial courts in setting fees based upon the normal hourly rate for the time expended, adjusted for the contingency of the case and the quality of the attorney's effort as reflected in the court's evaluation of the work it observed, the complexity of the issues, and the result achieved. Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973). See also Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102 (3d Cir. 1976); Merola v. Atlantic Richfield Co., 515 F.2d 165 (3d Cir. 1975); Merola v. Atlantic Richfield Co., 493 F.2d 292 (3d Cir. 1974).
 
 
 [7]
 33 U.S.C. § 921(b)(3) (1976) provides in pertinent part:
 The Board's orders shall be based upon the hearing record. The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole.
 
 
 [8]
 Director, Office of Workers' Compensation Programs, U. S. Department of Labor v. Rochester and Pittsburgh Coal Co. and Solarczyk, 594 F.2d 854 (3d Cir. 1979)
 
 
 [9]
 "The losing party may appeal to the BRB (Benefits Review Board) which reviews the ALJ decision but (the (BRB)) does not make any independent findings of fact. 33 U.S.C. § 921." Sun Shipbuilding and Dry Dock Co. v. McCabe, 593 F.2d 234, 237 (3d Cir. 1979)
 
 
 [10]
 See, E. g., Palazios v. Cambell Industries, 3 BRBS 37 (December 3, 1977); McCue v. International Terminal Operators Co., 4 BRBS 235 (July 16, 1976)
 
 
 [11]
 See Bednarek v. I.T.O. Corporation of Baltimore, 7 BRBS 708, 711 (February 15, 1978); Hilyer v. Morrison-Knudson Construction Co., 6 BRBS 754 (November 30, 1977); Beacham v. Atlantic and Gulf Stevedores, Inc., 7 BRBS 940 (February 13, 1977). In Beacham the Board noted: "(T)he only indications of specific findings by the ALJ are the stated consideration of services rendered, the reference to the regulation, and the notation that the amount requested equals $200 per hour. These few statements form an insufficient basis for a decision as to whether the attorney's fee award is arbitrary, capricious or an abuse of discretion. Consequently, a remand is necessary for more specific findings according to the amended regulations and the cases cited." Id. at 946
 
 
 [12]
 We do not now decide the question of whether the Board may, when presented with a full factual record, draw an appropriate conclusion from that record
 
 
 [13]
 33 U.S.C. § 921(c) (1976) provides in pertinent part:
 Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside. . . . Upon such filing, the court shall have jurisdiction of the proceeding and shall have the power to give a decree affirming, modifying, or setting aside, in whole or in part, the order of the Board and enforcing same to the extent that such order is affirmed or modified.