905 F.2d 1529
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CONSOLIDATION COAL COMPANY, Petitioner,
v.
Charles R. KERNS; Director, Office of Workers Compensation
Program, United States Department of Labor, Respondents.
 No. 89-1047.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 7, 1990.
Decided May 8, 1990.
 
 On Petition for Review of an Order of the Benefits Review Board. (87-1620-BLA)
 Allen R. Prunty, Jackson & Kelly, Charleston, W. Va., for petitioner.
 Robert F. Cohen, Jr., Cohen, Abate & Cohen, Fairmont, W. Va., for respondent.
 Ben.Rev.Bd.
 VACATED AND REMANDED WITH DIRECTIONS.
 Before PHILLIPS and WILKINS, Circuit Judges, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Consolidation Coal Company (Consolidation) appeals the Benefits Review Board's (BRB) decision reversing an administrative law judge's denial after remand of Charles R. Kerns' claim for black lung benefits.[1] When this case was first before the BRB, the BRB vacated and remanded for reconsideration an administrative law judge's decision and order awarding benefits. The BRB had then determined that the ALJ had applied an incorrect legal standard to the question of rebuttal under 20 C.F.R. Secs. 727.203(b)(2) and (b)(4), and accordingly remanded for redetermination of the rebuttal defense under those sections. Because we find reversible error in the BRB's first decision vacating and remanding, we reverse and order that the first ALJ's award granting benefits be reinstated.
 
 
 2
 * Charles R. Kerns worked for Consolidation from 1941 until his retirement in 1980 at the age of 64. From 1942 until 1972, Kerns worked as a welder. Kerns spent approximately half his time in the Central Shop in Monogah, West Virginia, where he was continually exposed to coal dust; the other half was performed inside various Consolidation mines. From 1972 until 1980, Kerns worked as an assistant shop foreman, and ultimately as shop foreman in the Central Shop. Kerns' job as foreman required, among other things, carrying 50-75 pound boxes of welding rods for distances of forty feet or more, which the Social Security Administration classifies "heavy work." See 20 C.F.R. Sec. 404.1567(d).
 
 
 3
 The record medical evidence in this case consists of multiple x-ray interpretations, the results of several pulmonary function and arterial blood gas studies, reports from examining and consulting physicians, and medical records regarding Kerns' hospitalizations for conditions unrelated to pulmonary health. Turning first to the x-ray interpretations and the blood gas and ventilatory studies, it is unclear whether twenty or twenty-one x-ray reports are in evidence, but the extant reports reference seven different chest x-rays taken between January 1, 1974, and May 18, 1983: twelve positive for pneumoconiosis, and either eight or nine reports negative. Of the twelve positive reports, seven are from four different B-readers.[2] Of the nine negative reports, seven are from six different B-readers. The three most recent x-ray reports, all by B-readers analyzing the most recent x-ray taken May 18, 1983, unanimously diagnosed pneumoconiosis. Based on this x-ray evidence, ALJ Maurer, the first ALJ to consider the evidence, found the interim presumption under 20 C.F.R. Sec. 727.203(a)(1) invoked. Conversely, because none of the ventilatory and blood gas studies qualified under the disability presumption tables set forth at Secs. 727.203(a)(2) (ventilatory studies) and (a)(3) (blood gas studies), ALJ Maurer declined to find the interim presumption of total disability under (a)(2) or (a)(3) invoked.
 
 
 4
 The record also includes a number of medical reports, one medical deposition, and the findings of the West Virginia Occupational Pneumoconiosis Board summarized as follows:
 
 
 5
 DATE OF
EXAMINATION PHYSICIAN RELEVANT RESULTS
9/9/76 Dr. Pravin I. Chronic obstructive pulmonary disease (COPD)
 Patel related to dust exposure in coal mine employment.
5/14/79 Dr. Ralph L. Occupational pneumoconiosis
 Jones
 Dr. J.L. Leef and resultant slight impairment of capacity to
 work; 60 pack/year cigarette smoker.
5/15/79 Dr. James H. Occupational Pneumoconiosis;
 Walker
 Dr. William 15% impairment.
 Pushkin
5/16/79 Dr. D.L. No comments regarding pneumoconiosis; minimal loss
 Rasmussen of respiratory functional capacity.
6/16/80 Dr. Shawn A. Negative for pneumoconiosis; chronic bronchitis
 Chillag with mild obstructive lung impairment due to
 cigarette smoking.
3/23/83 Dr. George O. Negative for pneumoconiosis, based solely on
 Kress x-rays.
5/24/83 Dr. Alberto Positive for coal workers pneumoconiosis COPD
 C. Lee related to coal dust and cigarettes. Total
 permanent disability.
7/29/83 Dr. Joseph J. Negative for pneumoconiosis; COPD; able to perform
 Renn last coal mining work, based solely on medical
 evidence.
 
 
 6
 Of the proffered reports, only Dr. Lee's report considered and discussed the "heavy" exertional levels required of Kerns' job as shop foreman. Drs. Kress and Renn never examined Kerns and Dr. Chillag had not examined Kerns since June 1980. ALJ Maurer therefore most heavily credited Dr. Lee's report and found invoked the presumption of total disability due to pneumoconiosis under Sec. 727.203(a)(4) (other medical evidence, including physicians' reports, establishing a totally disabling pulmonary impairment).
 
 
 7
 Turning to the rebuttal evidence, ALJ Maurer concluded that the reports of Drs. Jones, Leef, Rasmussen, Chillag, Kress, and Renn were insufficient to satisfy Consolidation's burden of proving rebuttal under Sec. 727.203(b)(2) (individual able to do his usual coal mine work or comparable work), because none of the cited reports considered the classification of Kerns' foreman job as "heavy work." ALJ Maurer next concluded that rebuttal under Sec. 727.203(b)(3) (no causal connection between coal mine employment and total disability) was similarly unjustified because, although Drs. Chillag, Kress, and Renn each stated with a reasonable degree of medical certainty that Kerns' pulmonary impairment is caused by cigarettes and not coal mining, "none of them fully explain how the evidence supports a distinction between the effect of cigarette smoking and pneumoconiosis or the causal connection of each to Claimant's impairment." Finally, ALJ Maurer rejected rebuttal under Sec. 727.203(b)(4), crediting the reports of Drs. Jones, Leef, and Lee who found positive indications of pneumoconiosis and rejecting the conclusions of Drs. Chillag and Kress, who, though they found no evidence of pneumoconiosis, prepared their reports without the benefit of the latest x-ray, which had been read positive by three B-readers. It is unclear from his opinion exactly why ALJ Maurer rejected Dr. Renn's report, which did take into account the positive readings of the most recent x-ray. ALJ Maurer noted that all three doctors who reported no pneumoconiosis nevertheless found some degree of pulmonary impairment.
 
 
 8
 On appeal, the BRB affirmed the finding of invocation of the Sec. 727.203(a)(1) (x-ray evidence) interim presumption because the record included at least one uncontested positive x-ray reading. See J.A. at 16 (citing Stapleton v. Westmoreland Coal Co., 785 F.2d 424 (4th Cir.1986)).[3] Having found the interim presumption properly invoked under (a)(1), the BRB found no need to discuss invocation of the (a)(4) presumption.
 
 
 9
 In reviewing ALJ Maurer's rebuttal-phase rulings, the BRB vacated and remanded ALJ Maurer's findings concerning (b)(2) and (b)(4) rebuttal. The BRB's (b)(2) ruling was based on ALJ Maurer's failure to rule out pulmonary or respiratory impairment as the cause of Kerns' total disability. The BRB's (b)(4) ruling was based on ALJ Maurer's failure to consider four relevant x-ray reports and his rejection of Drs. Chillag's and Kress' medical reports.
 
 II
 
 10
 BRB review of ALJ decisions is restricted to determination of whether the decision is supported by substantial evidence in the record as a whole and is not irrational or contrary to the law. See 33 U.S.C. Sec. 921(b)(3). Our review of the BRB's decision is for errors of law, including determination of whether the BRB applied the proper standard of review to the ALJ's decision and order. See Amigo Smokeless Coal Co. v. Director, OWCP, 642 F.2d 68, 69 (4th Cir.1981). Because we find it dispositive, we here review for error only the BRB's decision to vacate and remand ALJ Maurer's original decision and order awarding benefits, see Sykes v. Director, OWCP, 812 F.2d 890 (4th Cir.1987) (reviewing and reversing the BRB's first order remanding ALJ's judgment and order granting benefits), and do not address the decisions subsequent to the BRB's first remand.
 
 
 11
 * Asking this court to resolve the issue whether Sec. 723.203(b)(4) can ever be drawn upon to rebut the presumption invoked under Sec. (a)(1), Consolidation nowhere in its brief or at oral argument has disputed the propriety of ALJ Maurer's invocation of the (a)(4) interim presumption, choosing instead to address invocation of the (a)(1) presumption and its rebuttal. Although the BRB affirmed ALJ Maurer's finding of the (a)(1) presumption's invocation, thus obviating any felt need to review invocation of the (a)(4) presumption, this court is entitled to make an independent review of the record to decide whether the ALJ's findings were supported by substantial evidence. See Sun Shipbuilding & Dry Dock Co. v. McCabe, 593 F.2d 234, 238 (3d Cir.1979) (court must review the facts to determine whether there is substantial evidence in the record taken as a whole to support the ALJ's findings; only in this manner is it possible to determine whether the BRB properly exercised its review function). Accordingly, notwithstanding the BRB's failure to address (a)(4) invocation, because our review of the BRB's decision "is governed by the identical standards as is the Board when it reviews the ALJ's decision and order," Consolidation Coal Co. v. Chubb, 741 F.2d 968, 971 (7th Cir.1984), we here review ALJ Maurer's decision that the (a)(4) interim presumption had been invoked. Moreover, because we find (a)(4) invocation to have been proper, we need not reach the propriety of (a)(1) invocation.
 
 
 12
 Invocation of the interim presumption of total disability under Sec. 723.203(a)(4) is proper if other medical evidence, including the documented opinion of a physician using reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment. As noted above, ALJ Maurer gave particular weight to Dr. Lee's report because only Dr. Lee discussed the heavy exertional levels required by Kerns' last coal mine employment as a foreman. Moreover, although Dr. Lee based his diagnosis of total disability on a May 1983 examination, Drs. Kerns and Renn had never examined Kerns and Dr. Chillag had not examined Kerns since June 1980. ALJ Maurer's decision to credit Dr. Lee's report over the reports prepared by Drs. Chillag, Kress, and Renn in finding the (a)(4) presumption invoked was therefore a rational one supported by substantial evidence and not contrary to law. Cf. Sykes, 812 F.2d at 893 (in the context of (b)(2) rebuttal, "mere finding of 'no impairment' ... cannot be equated with a finding that a claimant can continue to perform coal mining work.").
 
 B
 
 13
 Having found substantial record evidence to support ALJ Maurer's invocation of the interim presumption of total disability under (a)(4), we turn now to a review of the BRB's decision to vacate and remand ALJ Maurer's rejection of Consolidation's rebuttal under (b)(2) and (b)(4).[4]
 
 
 14
 To establish (b)(2) rebuttal, Consolidation had the burden of establishing that Kerns was able to do "his usual coal mine work or comparable gainful work." Section 727.203(b)(2). In rejecting (b)(2) rebuttal, ALJ Maurer discredited the medical reports of Drs. Chillag, Kress, and Renn for their failure to refer to the exertional requirements of Kerns' job, while crediting the report of Dr. Lee which considered the heavy lifting required. ALJ Maurer concluded that, even if Kerns were only mildly impaired, as diagnosed by Drs. Chillag, Kress, and Renn, Kerns would nevertheless still be totally disabled from performing at the heavy exertional levels required by his job. The BRB correctly agreed with this part of ALJ Maurer's opinion, noting that "the administrative law judge's comparison between claimant's impairment and the exertional requirements of the job is a proper basis for discrediting physicians' opinions." J.A. at 16 (citing Henning, 7 B.L.R. 1-753. See also Sykes, 812 F.2d at 893 ("A mere finding of 'no impairment' ... cannot be equated with a finding that a claimant can continue to perform [his usual] coal mining work").
 
 
 15
 Nevertheless, the BRB vacated and remanded for reconsideration ALJ Maurer's rejection of (b)(2) rebuttal. The BRB's decision was based on ALJ Maurer's failure to discuss Kerns' non-qualifying ventilatory and blood gas studies, and the consequent failure to rule out the possibility that Kerns' total disability was not due to a pulmonary or respiratory impairment. This causation inquiry is foreclosed by our holding in Sykes, 812 F.2d at 894, decided after the BRB decision in this case, where we held that (b)(2) is concerned with whether the claimant is disabled for whatever reason. Accordingly, the BRB applied an improper legal standard in vacating ALJ Maurer's rejection of (b)(2) rebuttal, and we conclude that under the proper standard, ALJ Maurer's decision rejecting (b)(2) rebuttal was rational and supported by substantial evidence.
 
 
 16
 We turn finally to the BRB's decision and order remanding ALJ Maurer's rejection of Sec. 727.203(b)(4) rebuttal (evidence establishes that the miner does not, or did not, have pneumoconiosis). Consolidation asserts two grounds for upholding the BRB's remand for reconsideration. First, Consolidation asserts that ALJ Maurer erred as a matter of law by failing to consider four relevant negative x-ray readings. J.A. at 18 (citing Stapleton, 785 F.2d at 427 (in considering rebuttal of a presumption established under Sec. (a), "all relevant medical evidence must be considered ... including ... nonqualifying x-rays....")). Second, Consolidation argues that ALJ Maurer erroneously rejected three medical reports for their failure to consider the most recent x-ray, which was taken after two of the rejected reports were prepared. Id. (citing York v. Director, OWCP, 7 B.L.R. 1-641 (1985)).
 
 
 17
 Turning first to ALJ Maurer's failure to consider four relevant x-ray reports, any error in doing so was harmless. ALJ Maurer's opinion expressly accorded great weight to the uncontradicted positive findings of pneumoconiosis by three certified B-readers interpreting the most recent x-ray which was taken on May 18, 1983. J.A. at 70. Given the progressive nature of pneumoconiosis, this was surely rational. See Chubb, 741 F.2d at 973. None of the disputed reports addressed x-rays taken after June 6, 1980. All the evidence suggests that ALJ Maurer's decision would not have been any different had the erroneously omitted x-ray readings been before him.
 
 
 18
 We turn next to ALJ Maurer's rejection of the three medical reports. To establish rebuttal under (b)(4), Consolidation had the burden of proving that Kerns' lung impairment was not pneumoconiosis as defined in Sec. 727.202. For purposes of the Black Lung Act, pneumoconiosis is
 
 
 19
 a chronic dust disease of the lung ... arising out of coal mine employment.... For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or aggravated by dust exposure in coal mine employment.
 
 
 20
 Sec. 727.202.
 
 
 21
 The only evidence Consolidation provided in its effort to prove that Kerns' pneumoconiosis was not "significantly related to, or aggravated by dust exposure in coal mine employment" were the Kress, Chillag, and Renn reports to the effect that Kerns' lung impairment, whatever it was, was not coal workers' pneumoconiosis. Rather, the reports opined, Kerns' disability came from his long history of heavy cigarette smoking. The Chillag and Kress reports, operating without the benefit of the most recent x-ray, supported this conclusion by noting that although coal miners' pneumoconiosis shows up on an x-ray as opaque spots at the top part of the lung, Kerns' x-ray manifested opaque spots on the bottom part of the lung which, the reports state, is consistent with bronchitis due to cigarette smoking rather than pneumoconiosis. Though the Renn report noted the most recent x-ray, it had even less support, concluding simply that "[t]here is no pneumoconiosis ... [but] chronic bronchitis ... from his years of cigarette smoking ... [which] was neither caused, nor contributed to, by coal workers' pneumoconiosis." J.A. at 297 (report of Dr. Renn).
 
 
 22
 ALJ Maurer rejected the Chillag and Kress reports during the rebuttal phase for their failure to address the most recent x-ray available. Though he nowhere expressly so stated, it appears from the opinion that ALJ Maurer rejected the Renn report because although it noted pulmonary impairment, it never explained how Renn ruled out pneumoconiosis.
 
 
 23
 In vacating and remanding, the BRB held that the failure to consider the latest x-ray was, as a matter of law, insufficient grounds to reject the reports for purposes of (b)(4) rebuttal.[5] J.A. at 18 (citing York v. Director, OWCP, 7 B.L.R. 1-641 (1985) (error to reject medical reports for failure to consider record medical evidence, especially where the record medical evidence was produced after the rejected report)). We think the BRB erred in so ruling.
 
 
 24
 First off, it is not at all certain that the failure of these reports to consider the most recent x-ray was a legally insufficient reason, standing alone, for ALJ Maurer to reject them. See Campbell v. Consolidation Coal Co., 811 F.2d 302, 304 (6th Cir.1987) (ALJ properly rejected physician's report during rebuttal phase for failure to consider most recent ventilatory study). Contra York v. Director, OWCP, 7 B.L.R. 1-641 (1985). Nevertheless, even assuming that failure to consider the most recent x-ray evidence was a legally insufficient reason, standing alone, for rejection of the reports, we are convinced that any possible error in doing so was harmless. Independent grounds for rejecting them are abundantly supported on the record. These reports nowhere couch their conclusion as findings that Kerns suffered from no lung impairment within the broad definition of pneumoconiosis found in the statute and regulations. See Pavesi v. Director, OWCP, 758 F.2d 956, 965 (3d Cir.1985). They rely in the main on conclusory observations that lower lung spots are caused by cigarettes while upper lung spots are caused by coal miners' pneumoconiosis. Moreover, none of the three reports takes into account or indicates any consideration of the effects of Kerns' thirty-odd years in the coal mine. The Renn report, though prepared after the most recent x-ray, not only fails to discuss the possible effects of Kerns' coal mine employment, it fails to explain why bronchitis, and not pneumoconiosis, could even arguably be the proper diagnosis. We conclude that, as a matter of law, these reports could not have constituted sufficient (b)(4) rebuttal evidence, and in particular could not have supported a conclusion that Kerns' lung impairment was not at least "aggravated by dust in coal mine employment." Sec. 727.202. Finally, we observe that to the extent these rejected medical reports ruled out pneumoconiosis based upon their reading of Kerns' x-rays (and not even the most recent one at that) Congress itself, in enacting the 1977 amendments to the Black Lung Act, has recognized the inherent uncertainty of negative x-ray readings for pneumoconiosis.[6]
 
 
 25
 We therefore hold that ALJ Maurer did not err in refusing to find the (a)(4) presumption rebutted under (b)(4), and that the BRB therefore erred in remanding that issue for reconsideration.
 
 III
 
 26
 For the foregoing reasons, we vacate the BRB's order vacating and remanding ALJ Maurer's decision awarding benefits and all orders following that remand, and we remand with directions to award benefits in accordance with ALJ Maurer's decision and order of June 20, 1984.
 
 
 27
 SO ORDERED.
 
 
 
 [1]
 For reasons not completely clear from the record, Kerns' case was remanded to an ALJ different from the one rendering the first opinion
 
 
 [2]
 A B-reader is a physician who has demonstrated proficiency in classifying x-rays according to standards set by the National Institute of Occupational Safety & Health. See 42 C.F.R. Sec. 37.51
 
 
 [3]
 After the BRB's decision, the Supreme Court, in Mullins Coal Co. v. Director, OWCP, 484 U.S. 135 (1987), reversed Stapleton's holding that a single positive x-ray reading sufficed per se to invoke the (a)(1) presumption. In view of our disposition of this petition, it is not necessary to consider whether the ALJ's finding of invocation under (a)(1) might nevertheless have been proper here
 
 
 [4]
 To the extent Consolidation argues that the BRB erroneously affirmed ALJ Maurer's refusal to find rebuttal under (b)(3) (no causal relationship), we find that none of the medical reports adequately rule out the causal relationship between Kerns' lung disability and his coal mine work. See Bethlehem Mines Corp. v. Massey, 736 F.2d 120, 123 (4th Cir.1984) (employer must rule out causal relationship between coal mine employment and miner's total disability)
 
 
 [5]
 The BRB incorrectly believed that ALJ Maurer had rejected all three reports for their failure to address the most recent x-rays
 
 
 [6]
 "[T]he chest x-ray, or roentgenogram, [i]s an imperfect means of ascertaining the existence of pneumoconiosis in coal miners.... [T]he existence of [pneumoconiosis revealed] by autopsy where a chest X-ray was negative, indicate[s] an error rate of 25 percent in diagnosis.... [A]n X-ray may often be clouded by the presence of emphysema so that pneumoconiosis does not show on the X-ray." S.Rep. No. 743, 92d Cong., 1st Sess., reprinted in 1972 U.S.Code Cong. & Admin.News 2305, 2313-14