**AMIGO SMOKELESS COAL COMPANY, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U. S. DEPT. OF LABOR, and Clarence Bower, Respondents.**

No. 80–1192.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 13, 1980.

Decided Feb. 20, 1981.

Rehearing Denied March 23, 1981.

W. F. Richmond, Jr., Beckley, W. Va. (Bowers, Hodson, Henderson & Richmond, Beckley, W. Va., on brief), for petitioner.

Belva D. Newsome, U. S. Dept. of Labor, Washington, D. C., (Carin Ann Clauss, Sol. of Labor, Laurie M. Streeter, Associate Sol., Judith E. Wolf, Co-Counsel for Black Lung Benefits, Washington, D. C., on brief), for respondents.

Before HALL, MURNAGHAN and SPROUSE, Circuit Judges.

MURNAGHAN, Circuit Judge:

On December 26, 1973, Clarence Bower filed a claim for black lung benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972, 30 U.S.C. § 901 et seq. A deputy commissioner of the Office of Workers' Compensation Programs, United States Department of Labor, at an informal conference, determined that Bower was entitled to benefits and that appellant Amigo Smokeless Coal Company was the coal mine operator responsible for paying those benefits. Amigo contested Bower's status as a miner during his employment with Amigo and, therefore, its responsibility for paying the benefits and requested a hearing.

Following the hearing, at which all parties had the opportunity to introduce evidence, examine witnesses, and argue the facts and law, the hearing officer issued a Decision and Order holding that Bower was a miner during his employment with Amigo and that Amigo was the coal mine operator responsible for the payment of his black lung benefits. The Benefits Review Board affirmed the decision of the hearing officer and Amigo has appealed. We affirm.

The sole issue raised on appeal is whether the Benefits Review Board correctly affirmed the hearing officer's determination that Bower, during the time he was employed by Amigo, was a "miner" so as to create in Amigo the responsibility of paying the black lung benefits to which Bower is entitled.[1] On appeal from a decision of the Board, the Court reviews only for errors of law including whether the Board has used the proper standard of review in considering the hearing officer's decision. E. g., Sun Shipbuilding & Dry Dock Co. v. McCabe, 593 F.2d 234, 237–38 (3d Cir. 1979); General Dynamics Corp., Quincy Shipbuilding Division v. Director, Office of Workers' Compensation Programs, 585 F.2d 1168, 1170 (1st Cir. 1978).[2] Moreover, the Board's resolution of issues of statutory construction, or the application of a general statutory term to a specific set of facts, should be upheld if the Board's decision is supported by a reasonable factual and legal basis. E. g., Cardillo v. Liberty Mutual Insurance Co., 330 U.S. 469, 478–79, 67 S.Ct. 801, 806–07, 91 L.Ed. 1028 (1947); General Dynamics Corp., supra, 585 F.2d at 1170; Alabama Dry Dock & Shipbuilding Co. v. Kininess, 554 F.2d 176, 177 (5th Cir. 1977), cert. denied, 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 190 (1977).

The Board correctly determined that substantial evidence supports the hearing officer's findings that, while employed by Amigo, Bower worked as a laboratory technician collecting samples of coal for processing and analysis. Bower spent approximately 85 percent of his time collecting samples from Amigo's various mining sites and the cleaning plant, where coal is separated from impurities and sized. He visited the mining site locations at least two to four or more days per week to pick up raw coal samples, but was not required to go underground. Bower visited the tipple, a coal cleaning and processing plant, everyday, at least two times a day for 15 minutes per visit, to gather coal directly from conveyor belts.

If it is determined that Bower was not a "miner" during his tenure with Amigo, he will still receive the benefits to which he is entitled, but they will be paid by the Black Lung Trust Fund, a fund established by the 1977 amendments to the black lung laws and funded by a per tonnage tax on coal operators for the purpose of paying benefits to which a miner is entitled when no responsible operator can be found or made to pay. 30 U.S.C. §§ 934, 934a.

---

1. Bower's entitlement to benefits is undisputed. He is irrebuttably presumed to be totally disabled by pneumoconiosis because of the length of his employment in various coal mines other than Amigo's, performing duties which unquestionably made him a miner, together with the evidence he submitted showing that he suffered from a chronic dust disease of the lung. 30 U.S.C. §§ 921(c)(3), 932(h).

Under the statutory scheme, none of Bower's employers other than Amigo can be held responsible for the payment of his benefits, and Amigo is liable only if Bower fell within the statutory and regulatory definition of "miner" while employed by that company.

2. Appeals from black lung benefits decisions are governed by 33 U.S.C. § 921 (Section 21 of the Longshoremen's and Harbor Workers' Compensation Act). 30 U.S.C. § 932(a).

Bower then took the coal samples to the preparation room of the laboratory where the coal was first crushed into small particles and then pulverized until it was the consistency of flour. From the preparation room, where there was coal dust, Bower brought the pulverized coal in approximately one-gram quantities into the testing portion of the laboratory, which was relatively free of coal dust. The coal was there tested for ash, sulfur, BTU, fusion, and coke buttons to determine its composition and hence its market price.

Section 902(d) of Title 30 U.S.C.[3] states:

The term "miner" means any individual who is or was employed in a coal mine.

The regulations further explain that:

"Miner" or "coal miner" means any individual who is or was employed in a coal mine, performing functions in extracting the coal or preparing the coal so extracted.

20 C.F.R. § 715.101(a)(5) (1974). 30 U.S.C. § 802 provides:

(h) "coal mine" means an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations, and other property, real or personal, placed upon, under, or above the surface of such land by any person, used in, or to be used in, or resulting from, the work of extracting in such area bituminous coal, lignite, or anthracite from its natural deposits in the earth by any means or method, and the work of pre-

paring the coal so extracted, and includes custom coal preparation facilities;

(i) "work of preparing the coal" means the breaking, crushing, sizing, cleaning, washing, drying, mixing, storing, and loading of bituminous coal, lignite, or anthracite, and such other work of preparing such coal as is usually done by the operator of the coal mine.

■ The sparse case law construing the term "miner" supports the Board's determination that the definition of miner contains two elements—work in a coal mine, and performing functions in extracting or preparing coal, i. e., a situs test and a function test. *Freeman v. Califano*, 600 F.2d 1057 (5th Cir. 1979); *Adelsberger v. Mathews*, 543 F.2d 82 (7th Cir. 1976); *Sexton v. Mathews*, 538 F.2d 88 (4th Cir. 1976); *Roberts v. Weinberger*, 527 F.2d 600 (4th Cir. 1975). There was, therefore, an established legal basis for the Board's decision to apply the two-prong test to the facts in determining whether Bower was a miner.

In determining whether Bower was engaged in the work of preparing coal, all three members of the Board agreed that Bower's testing samples of coal and preparing samples for testing came within the statutory definition.[4] 30 U.S.C. § 802(i). There was a factual basis in the record and a legal basis for such a determination; some evidence tended to show that knowledge of the chemical composition and energy content of the coal was a necessary step

---

**3.** All statutory references are to the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972. In 1977 Congress enacted the Black Lung Benefits Reform Act of 1977 which amended the earlier act and, *inter alia*, expanded the definition of "miner." The Reform Act became effective on March 1, 1978 while the appeal of the hearing officer's Decision and Order was pending before the Benefits Review Board.

The Board ordered all parties to brief the effect, if any, of the 1977 amendments on the case; all parties responded. The Board, without deciding which law properly applied, reviewed the Decision and Order only under the law as it existed at the time the claim was filed. Both the government and Amigo agree that this is the applicable law.

Because of our determination that Bower qualifies as a miner under the 1972 law, and because the 1977 amendments had the effect of expanding the types of employees of coal mine operators who fall within the definition of miner, it is not necessary for us to decide whether the Board was correct in applying only the 1972 definition.

**4.** The dissenting Board member, however, thought that the time spent *collecting* the samples did not meet the definition. Since Bower spent only 15% of his time doing work which the dissent characterized as coal extraction or preparation, and since the dissent contended for a four-part test which would require that a majority of a person's work activities meet the definition, the dissent argued that Bower was not a miner.

in Amigo's preparation of the coal for sale. *See Roberts v. Weinberger*, 527 F.2d at 602 ("The coal was not extracted and prepared until it was taken from the mine to the place where it was processed and graded so as to be in condition for delivery to distributors and consumers"); *Adelsberger v. Mathews*, 543 F.2d at 84 (clerical employee who spent part of her time directing switching of grates and railroad cars, to determine what kind of coal was prepared and to whom it was shipped, and supervising weighing of coal was engaged in work of preparing coal). Additionally, the majority determined that claimant's work in collecting the samples at the mine sites and tipple and transporting them to the laboratory was also work in preparing coal. *Roberts v. Weinberger*, 527 F.2d at 602, provides a valid legal basis for such a determination. There we held that transporting coal from the excavation site to the processing plant so that it could be prepared for sale was "part of the process of 'extracting the coal and preparing the coal so extracted.'" If testing the coal in the laboratory is also part of the preparation of the coal, then transporting the coal from the excavation site to the laboratory is, under *Roberts*, evidently work of preparing coal.

In applying the situs test, the majority and concurring opinions agreed that, by going to and into excavation sites and the tipple as required by his job, Bower worked in a mine. 30 U.S.C. § 902(d). There was a justifiable legal and factual basis for the conclusion. *See Adelsberger v. Mathews*, 543 F.2d at 84 (clerical employee who went from office into "an area defined as part of

the mine, underneath the tipple," to carry out her duties was employed in a mine.) [5]

Because the Board had a substantial basis for finding that Bower was engaged in the work of preparing the coal and that he worked in or at a mine, it correctly decided that he was a miner under the Black Lung Benefits Act and the case law.

*AFFIRMED.*

---

5. The concurring opinion would have gone even further and held that, since claimant's work in the laboratory was "other work of preparing ... coal as is usually done by the operator of the coal mine," 30 U.S.C. § 802(i), the laboratory was thus "land ... used in ... the work of preparing the coal," *i. e.*, a coal mine. 30 U.S.C. § 802(h). For his view, the concurrer would have found support in the dissent which stated that Bower was employed in a coal mine

    because Amigo is a coal-producing entity, and it had an employment relationship with claimant who was a salaried employee.

The dissent went on to find that

[c]laimant's work of crushing and preparing coal samples and testing them at the laboratory, which was 500 feet from the preparation plant, meets the definition of preparation at 30 U.S.C. § 803(i),

thus agreeing with the concurring opinion's second ground for determining that Bower met the situs test. The description of the opinion as a dissent is, therefore, in regard to the situs test, somewhat misleading. As noted in footnote 4, *supra*, the dissent sought to impose a quantum test and argued that the percentage of the work performed by Bower satisfying the function test was insufficient to classify Bower as a miner.