**Mary EPLION (Widow of Audie Eplion), Petitioner,**

**v.**

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, DIVISION OF COAL MINE WORKERS' COMPENSATION, U.S. DEPARTMENT OF LABOR, Respondent.**

**No. 85–1823.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1986.

Decided June 25, 1986.

J. Stewart Kaiser, for petitioner.

Ronald G. Ray, U.S. Dept. of Labor (George R. Salem, Deputy Sol., Donald S. Shire, Associate Sol., Washington, D.C., J. Michael O'Neill, Washington, D.C. Counsel for Appellate Litigation, on brief), for respondent.

Anthony J. Cicconi, Shaffer & Shaffer, Madison, W.Va., on brief), for amicus curiae.

Before WIDENER, MURNAGHAN and ERVIN, Circuit Judges.

WIDENER, Circuit Judge:

Petitioner, Mary Eplion, is the surviving spouse of Audie Eplion, who died on December 17, 1971. Audie Eplion worked for the Ohio River Company in Huntington, West Virginia. In 1970, Audie Eplion applied for black lung benefits pursuant to 30 U.S.C. § 901, et seq, claiming that he had become totally disabled because of pneumoconiosis from exposure to coal dust while employed by the Ohio River Company. Both the Administrative Law Judge (ALJ) and the Benefits Review Board concluded that Eplion was not entitled to black lung benefits because he was not a miner as defined by the Black Lung Benefits Act, 30 U.S.C. § 902(d). Mrs. Eplion petitions for review of that ruling, and we affirm.

Our review of the Benefits Review Board's order is governed by § 21 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 921. 30 U.S.C. § 932(a); *Amigo Smokeless Coal Company v. Director, etc.*, 642 F.2d 68, 69 n. 2 (4th Cir.1981). The Board's resolution of questions of statutory construction or application of the act to the particular facts of a case must be upheld if supported by a reasonable factual and legal basis. *Amigo Smokeless Coal Co.*, supra, at 69. The Board must affirm the findings of fact of the ALJ if they are supported by substantial evidence. 33 U.S.C. § 921(b)(3); *Zbosnik v. Badger Coal Co.*, 759 F.2d 1187 (4th Cir.1985). Here, the Benefits Review Board found substantial evidence to support the ALJ's conclusion that Eplion was not a miner within the Act's definition. We cannot say that this was error.

The Ohio River Company operated a coal mining facility at Logan, West Virginia and terminal facilities at Huntington, West Virginia during the vast majority of years Eplion was its employee.[1] Coal mined at the Logan facility was transported by railroad car to the Huntington terminal, where it was loaded into barges and sent to purchasers, primarily the Cincinnati Power Plant. Eplion worked at the Huntington facility knocking open the doors to the railroad cars so that the coal could be loaded into the barges. He was exposed to a tremendous amount of coal dust while performing his job.[2] As a result, he later became disabled from work because of pneumoconiosis.

The sole issue on appeal is the correctness of the finding that Eplion was not a miner within the meaning of the black lung statute. To be eligible to receive black

---

1. In the 1960's, the company sold all of its coal mines. It is now involved only in the loading and shipping of coal.

2. Eplion later became a locomotive engineer and finally a watchman as his health continued to deteriorate.

lung benefits, a disabled petitioner must have been a miner, defined in 30 U.S.C. § 902(d) as:

An individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal. Such term also includes an individual who works or has worked in coal mine construction or transportation in or around a coal mine, to the extent such individual was exposed to coal dust as a result of such employment.

A coal mine is defined in 30 U.S.C. § 802(h) for black lung purposes to be: ... an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations, and other property, real or personal, placed upon, under, or above the surface of such land by any person, used in, or to be used in, or resulting from, the work of extracting in such area bituminous coal, lignite, or anthracite from its natural deposits in the earth by any means or method, and the work of preparing the coal so extracted, and includes custom coal preparation facilities.

30 U.S.C. § 802(i) also provides the following definition for the work of preparing coal:

... the breaking, crushing, sizing, cleaning, washing, drying, mixing, storing and loading of bituminous coal, lignite, or anthracite, and such other work of preparing such coal as is usually done by the operator of a coal mine.

In order to prevail, Mrs. Eplion must prove that her husband worked in or around a coal mine or coal preparation facility (the situs requirement) and that he performed functions involved in the extraction or preparation of the coal (the function requirement). *Amigo Smokeless Coal Co.,* supra, at 70. Both the situs requirement and the function requirement must be met before a claimant is entitled to receive black lung benefits.

We agree with the ALJ that Mrs. Eplion has not shown that her husband was a miner under the two-prong test of *Amigo Smokeless Coal Co.* Once the coal left the Ohio River Company's Logan facility, it had been extracted from the ground and prepared for use. The only thing lacking was its delivery to the customer. Eplion was involved only in transportation and distribution for removal geographically from the mine. Eplion was not involved in transporting the coal before it was prepared. The coal was already processed and prepared for market before Eplion had any contact with it.

Mrs. Eplion claims that the coal was in fact washed at the Huntington facility, thereby bringing that facility within the statutory definition of coal preparation. Under these facts, we disagree. The coal left the Logan facility processed and ready for use. The coal was again washed in Huntington, not to prepare it for market but because neighbors of that facility had complained about the dust produced as the coal was emptied from the railroad cars and loaded into the barges. To satisfy these complaints, the company again washed the coal in Huntington to cut down on the dust. Because that washing was not necessary for the processing of the coal into its marketable form, we decline to extend the definition of a coal mine to include the Huntington facility.

Mrs. Eplion's reliance on *Roberts v. Weinberger,* 527 F.2d 600 (4th Cir.1975), is misplaced. In *Roberts,* the claimant's decedent operated a truck hauling coal in a strip mining operation from the extraction site to the tipple, where the coal was processed and loaded into railroad cars for further shipment. The coal was not prepared for shipment until after Roberts had taken it from the mine to the tipple. Roberts' job was an integral part of the process of preparing the coal for market, in contrast to Eplion's job which had nothing to do with the coal until after it had been prepared for market and shipped many miles to the barge facility on the Ohio River.

We conclude that Eplion did not work in or around a coal mine or coal preparation facility within the meaning of the applicable statutes and regulations.

The petition for review is accordingly DENIED.