813 F.2d 400
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Curtis R. BRUMMITT, Petitioner,
v.
WESTMORELAND STONEGA COAL COMPANY, Respondent,
and
Director, Office of Workers' Compensation Programs, United
States Department of Labor, Party-in-Interest.
 No. 85-2229.
 United States Court of Appeals, Fourth Circuit.
 Submitted Oct. 31, 1981.
Decided Dec. 17, 1986.
 
 Before RUSSELL, PHILLIPS and CHAPMAN, Circuit Judges.
 C. Randall Lowe, Yeary, Tate & Lowe, on brief), for petitioner.
 Laura Beverage, Jackson, Kelly, Holt and O'Farrell, on breif), for respondent.
 PER CURIAM:
 
 
 1
 Curtis R. Brummitt timely petitioned for a review of the order of the Benefits Review Board [BRB or Board] affirming a decision of the administrative law judge [ALJ] denying benefits provided by the Black Lung Benefits Act, 30 U.S.C. Sec. 901 et seq. [the Act]. The facts and legal argument are adequately presented in the parties' briefs and the record on appeal, the dispositive issue has been recently decided authoritatively, and the decisional process will not be significantly aided by oral argument. Accordingly, we dispense with oral argument under Rule 34(a), Fed.R.App.P., and Local Rule 34(a), and affirm the order of the Benefits Review Board.
 
 
 2
 The federal black lung statute was first enacted in 1969 to provide disability benefits to coal miners disabled by pneumoconiosis caused by their coal mine employment. Federal Coal Mine Health & Safety Act of 1969, 30 U.S.C. Sec. 901 et seq. This legislation, as modified by amendments in 1972 (the Black Lung Benefits Act), in 1977 (the Black Lung Benefits Reform Act), and in 1981 (the 1981 Amendments), reflects Congressional concern for the thousands of coal miners who suffer from incurable lung disease resulting from their work in the coal mines. 30 U.S.C. Sec. 901(a). See generally, Usery v. Turner Elkorn Mining Company, 428 U.S. 1, 6-12 (1976).
 
 
 3
 In recognition of the degenerative and progressive nature of pneumoconiosis, Congress established several presumptions that favor the granting of benefits. Congress designed the presumptions to insure that difficulties in proving pneumoconiosis by medical evidence not prevent miners from receiving benefits. 30 U.S.C. Sec. 901(c); S.Rep. 92-743, 92nd Cong., 2d Sess., Reprinted in [1972] U.S.Code, Cong. and Admin.News 2305. See, e.g., Rose v. Clinchfield Coal Company, 614 F.2d 936, 939 (4th Cir.1980).
 
 
 4
 The ALJ found that Mr. Brummitt qualified for one of the presumptions: the "ten year" or "interim" presumption allowed by 30 U.S.C. Sec. 921(c)(1), 20 C.F.R. Sec. 727.203(a). The interim presumption is a rebuttable presumption of total disability due to pneumoconiosis arising out of coal mine work, and is allowable to claimants who can prove they have worked at least ten years in the nation's coal mining industry (Mr. Brummitt worked in the mines for 16-17 years) and can produce at least one of four types of medical evidence tending to show disability. The medical evidence may be: (1) x-rays showing signs of pneumoconiosis; (2) ventilatory studies showing impaired respiratory ability; (3) arterial blood gas studies showing impaired ability to diffuse oxygen through the lungs into the blood system; or (4) other medical evidence, including the documented opinion of a physician exercising reasonable medical judgment, establishing that the miner suffers from a totally disabling respiratory or pulmonary impairment. 20 C.F.R. Sec. 727.203(a)(1)-(4).
 
 
 5
 This Court has recently construed the operation of the interim presumption. In Stapleton v. Westmoreland Coal Company, 785 F.2d 424 (4th Cir.1986) (en banc), this Court held that the interim presumption is invoked under 20 C.F.R. Sec. 727.203(a)(1) or (3) when a single qualifying x-ray indicates evidence of pneumoconiosis or a single qualifying set of blood gas studies indicates an impairment in the transfer of oxygen from the lungs to the blood, pursuant to regulatory standard, regardless of the number of negative x-rays or blood gas studies. 785 F.2d at 426. This Court also held that the interim presumption is established under 20 C.F.R. Sec. 727.203(a)(4) by one qualifying physician's opinion, regardless of the number of negative opinions. Id.
 
 
 6
 In the instant case the ALJ found that the interim presumption was allowable to Mr. Brummitt on the basis of the expert opinion of his treating physician, Dr. L.C. Strong, whose opinion was based on a physical examination, breathing sounds, clinical tests and chest x-ray readings. Although Dr. Strong's report did not state precisely that petitioner suffered a "totally disabling respiratory or pulmonary impairment," the ALJ interpreted his statements as being tantamount to such a conclusion.
 
 
 7
 Accordingly, the ALJ invoked the interim presumption pursuant to 20 C.F.R. Sec. 727.203(a)(4), thus shifting to respondent the burden of rebutting the presumption that petitioner was totally disabled by pneumoconiosis.
 
 
 8
 The interim presumption can be rebutted by showing: (1) that the miner was doing his usual coal mine work or comparable and gainful work when he died; (2) that the miner was able to do his usual coal mine work or comparable and gainful work; (3) that the miner's disability did not arise from coal mine employment; or (4) that the miner does not have pneumoconiosis. 20 C.F.R. Sec. 727.203(b). In Stapleton this Court ruled that all relevant medical evidence must be considered and weighed on rebuttal of the interim presumption, including non-qualifying x-rays, test results and physicians' opinions, regardless of the section under which the presumption was invoked. Stapleton, 785 F.2d at 427. The term "relevant medical evidence" is described in detail by the Act itself:
 
 
 9
 In determining the validity of claims ..., all relevant evidence shall be considered, including, where relevant, medical tests such as blood gas studies, x-ray examination, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the claimant's physician....
 
 
 10
 30 U.S.C. Sec. 923(b).
 
 
 11
 The weight to be given such evidence is in no way limited, except that "no claim for benefits ... shall be denied solely on the basis of the results of a chest roentgenogram." Id. Yet even this limitation must be read with emphasis on the term "solely" when applied to a coal mine operator. Usery v. Turner Elkhorn Mining Company, 428 U.S. at 32.
 
 
 12
 In his consideration of all the relevant medical evidence, the ALJ observed that of four examining physicians who examined Mr. Brummitt, only one--his personal physician, Dr. Strong--diagnosed pneumoconiosis, and Dr. Strong's diagnosis was partially based on a single x-ray taken some five years prior to the filing of Brummitt's claim for benefits.[1] The ALJ, in judging the weight and credibility of the evidence, determined that this x-ray interpretation was undercut by x-rays taken and interpreted by three other experts within a year of Brummitt's filing his claim for benefits. Significantly, the ALJ observed that the x-rays interpreted as not disclosing evidence of pneumoconiosis were read by three separate physicians, two of whom were designated "B" readers by the National Institute of Occupational Safety and Health after passing an examination and interpreting x-rays for pneumoconiosis, with the third being certified by the American Medical Directory as a Board-certified radiologist. A fourth physician, designated as practicing radiology, found no definite evidence of pneumoconiosis. Consequently, the ALJ rejected Dr. Strong's x-ray interpretation.
 
 
 13
 The ALJ specifically found from the record that Dr. Strong's expert opinion should be entitled to additional weight since he was the petitioner's treating physician, citing Shaaf v. Mathews, 574 F.2d 157 (3rd Cir.1978), but concluded "that his opinion as to etiology of ... [Brummitt's] respiratory condition is outweighed by the other evidence of record. I conclude that ... [Brummitt] does not have pneumoconiosis."
 
 
 14
 Consequently, the ALJ found that the interim presumption of total disability due to pneumoconiosis was effectively rebutted, and denied petitioner's claim. Brummitt timely appealed to the Benefits Review Board.
 
 
 15
 The BRB's scope of review of the ALJ's decision and order is governed by statute and regulation.
 
 
 16
 The Benefits Review Board is not empowered to engage in a de novo proceeding or unrestricted review of a case brought before it. The Board is authorized to review the findings of fact and conclusions of law on which the decision or order appealed from was based. Such findings of fact and conclusions of law may be set aside only if they are not in the judgment of the Board supported by substantial evidence in the record considered as a whole or in accordance with law.
 
 
 17
 20 C.F.R. Sec. 802.301; 33 U.S.C. Sec. 921(b)(3), incorporated into the Black Lung Act by 30 U.S.C. Sec. 932(a) et seq. Wilson v. Benefits Review Board, 748 F.2d 198, 200 (4th Cir.1984); see also, Zbosnik v. Badger Coal Company, 759 F.2d 1187, 1189 (4th Cir.1985).
 
 
 18
 This Court has described its review of the Board's decision as "free"; we consider, as did the Board, whether there was substantial evidence to support the decision of the ALJ. Zbosnik, 759 F.2d at 1189-90; see also Eplion v. Director, Office of Workers Compensation Programs, 794 F.2d 935 (4th Cir.1986).
 
 
 19
 A fair review of the ALJ's decision and order rejecting Mr. Brummitt's claim discloses that the ALJ thoroughly and exhaustively considered all the relevant medical evidence pertaining to this case. He assiduously compared the objective medical data to the statutory and regulatory standards governing proof of pneumoconiosis, and found petitioner's proof lacking.
 
 
 20
 On appeal petitioner fails to deal with or even consider the medical evidence and reports of physicians denying the presence of pneumoconiosis. Petitioner treats the interim presumption as absolute medical proof of his right to black lung benefits. He fails to counter the rebuttal to his presumption.
 
 
 21
 We conclude that the ALJ's findings and conclusions are amply supported by substantial evidence appearing in the record, and that there is a reasonable factual and legal basis for the Board's affirming the ALJ's decision and order. Accordingly, we affirm the order of the Benefits Review Board.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Petitioner's claim was filed 13 February 1978; the single x-ray interpreted as positive for pneumoconiosis was taken 27 June 1973