**In the Matter of Stanley STROH, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; and Benefits Review Board, United States Department of Labor, Respondents.**

**No. 86–3173.**

United States Court of Appeals, Third Circuit.

Argued Oct. 14, 1986.

Decided Jan. 28, 1987.

Charles A. Bressi, Jr. (argued), Law Offices of Charles A. Bressi, Jr., Pottsville, Pa., for petitioner.

Michael J. Denney (argued), George R. Salem, Donald S. Shire, J. Michael O'Neill, Thomas L. Holzman, U.S. Dept. of Labor, Office of Sol., Washington, D.C., for respondents.

Before GIBBONS and BECKER, Circuit Judges and VAN ARTSDALEN, District Judge *.

### OPINION OF THE COURT

BECKER, Circuit Judge.

This petition for review of a final decision of the Department of Labor Benefits Review Board presents the question whether a self-employed trucker, who loaded coal at a mine site and hauled it to a breaker where it was to be processed, is a "miner"

---

* The Honorable Donald W. Van Artsdalen, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

eligible for benefits under the Black Lung Benefits Act (BLA), 30 U.S.C. § 901 *et seq.* (1982). The Administrative Law Judge found that the petitioner-claimant, Stanley Stroh, did not come within the definition of a "miner" under the Black Lung Benefits Act, as amended in 1977 to include transportation workers, because he was self employed and transported the coal to the processing plant over public highways. The Benefits Review Board (BRB) affirmed the ALJ's decision and order.

We conclude that Stroh is a "miner" eligible for benefits under the Act. Accordingly, we grant the petition for review, reverse the decision of the BRB, and remand the case to the ALJ for further proceedings consistent with this opinion.[1]

## I.

The relevant facts, developed from Stroh's testimony at a hearing before the ALJ, may be stated most succinctly.[2] Stroh was a self-employed coal hauler who would buy coal from independent miners, shovel it into his truck, and haul it to independently owned coal processing plants where he sold the raw coal to the processor. He shoveled up to 16 tons of coal a day, and frequently went underground to help mine the coal. If he had spare time, Stroh also hauled processed coal to private homes.

Stroh applied for Black Lung benefits on August 13, 1979. On December 1, 1982, the ALJ found him not entitled to benefits because the Act's coverage does not "encompass a self-employed coal hauler whose commercial activity was between the mine and independently owned processing plants located elsewhere." The ALJ reasoned

that Stroh would have been covered if he had established the following:

1) he operated a truck hauling coal from the immediate site of its extraction to a tipple where it was processed, graded and loaded onto railway cars for further shipment; and

2) his regular journey took him not over public highways, but only over roads of the mining company.

Because of Stroh's failure to satisfy these two elements, the ALJ concluded that he was not a "miner" under the Act, and denied his claim.

Stroh appealed this determination to the BRB. On January 31, 1986, the BRB affirmed the denial of benefits in a 2–1 decision. The BRB employed a three-prong "function, status, situs" test, *see infra,* to analyze the claim. Most notably, the Board held that the claimant had failed to satisfy the "status" element of its test, because it thought that, once Stroh purchased the raw coal from the mines it was injected into the stream of commerce and was no longer "coal which is being processed," as required by the "status" prong of the definition of miner. The Board added that Stroh's loading and mining activities were ancillary to his transportation of coal to consumers and likewise could not be considered coal mine employment.[3]

## II.

In the Black Lung Benefits Reform Act of 1977, Pub.L. 95–239, 1978 U.S.Code Cong. & Ad.News (92 Stat.) 95, Congress amended the Black Lung Act to define miner as follows:

---

1. We have jurisdiction pursuant to 33 U.S.C. § 921(c) (1982).

2. The ALJ did not make findings of fact as such, but both the ALJ and BRB apparently accepted this testimony of the claimant, for the facts set forth in the text are recited by the BRB in its opinion. We accept them as the factual basis for our analysis.

3. Commissioner Brown, in dissent, also adopted the three-part "function, status, situs" test, but

he concluded that the claimant had satisfied all three requirements. He found the status element satisfied because of his view that the purchase of raw coal by claimant and its resale to a coal processing plant did not change the unprocessed status of the coal. Additionally, Commissioner Brown pointed out that the processing plant was not an ultimate consumer, so that coal Stroh purchased from the mines and sold to the plants was not in the stream of commerce at the time of either of those two transactions.

The term "miner" means any individual who works, or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal. Such term also includes an individual who works, or has worked, in coal mine construction, *or transportation, in or around a coal mine,* to the extent such individual was exposed to coal dust as a result of such employment.

30 U.S.C. § 902(d) (Emphasis added). Shortly after the 1977 amendments the Secretary of Labor promulgated regulations which, *inter alia,* clarified the Act's definition of "miner" as follows:

"Miner" or "coal miner" means any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal. The terms also includes an individual who works or has worked in coal mine construction or transportation in or around the coal mine to the extent such individual was exposed to coal dust as a result of such employment.

20 CFR § 725.101(a)(2b). The term "miner" is further defined for Part C claims (those filed after January 1, 1974) in the regulations at 20 C.F.R. 725.202(a) to include:

A *person who is or was a self-employed miner or independent contractor, and who otherwise meets the requirements of this paragraph, shall be considered a miner for the purpose of this part.*

20 C.F.R. 725.202(a).

The term coal mine is defined as:

all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels ... placed upon, under or above the surface ... and includes *custom coal preparation facilities.*

30 U.S.C. § 902(d) (emphasis added). It is undisputed that the coal processing facility to which claimant sold his coal comes within this definition of coal mine. The definition of "miner" which emerges from the conjunction of the above four definitions would appear to include claimant, since he is an independent contractor who has been exposed to coal dust while working in transportation in and around coal mines.

Moreover, the limited legislative history concerning these provisions indicates that the BLA is remedial legislation, intended to provide coverage to all self-employed miners and independent contractors, and that Congress intended that the Act protect workers who are employed in or around a coal mine or preparation facility in the transportation of coal to the extent they are exposed to coal dust. H.Conf.Rep. No. 864, 95th Cong., 2nd Sess., *reprinted in* 1978 U.S.Code Cong. & Ad.News 237, 308–309. The canons of statutory construction teach us to construe such remedial legislation broadly, so as to effectuate its purposes.

In construing the term "miner," we have employed a two-prong test: a "situs" test, which requires work in or around a coal mine or preparation facility, and a "function" test, requiring performance of coal extraction or preparation work. Both of these elements must be satisfied for an individual to be considered a miner. *Wisor v. Director, Office of Workers' Compensation Programs,* 748 F.2d 176,, 178 (3d Cir. 1984). *Accord, Southard v. Director, Office of Workers' Compensation Programs,* 732 F.2d 66, 69 (6th Cir.1984); *Amigo Smokeless Coal Co. v. Director, Office of Workers' Compensation Programs, U.S. Department of Labor,* 642 F.2d 68 (4th Cir.1981). To satisfy the situs test, a claimant must have worked in or around a coal mine or custom coal preparation facility and have been exposed to coal dust as a result of his transportation work. The BRB found, appellees concede, and we agree, that Stroh satisfies this requirement.

The "function" prong requires that the claimant's job was "integral to the extraction or preparation of coal, not ancillary to the delivery and commercial use of processed coal." BRB Op. at 130a. The BRB, however, also imposed a "status" requirement, pursuant to which the "claimant must [have] be[en] working with coal which [was] being processed, rather than a fin-

ished product in the stream of commerce." *Id.* The BRB held that Stroh did not satisfy the status requirement, because "once claimant purchased the coal, it entered the stream of commerce. A claimant cannot be considered a miner when his hauling activities involve coal that is already injected into the stream of commerce." *Id.*

The BRB erred in so holding. Stroh satisfies the function test because he transported coal still in the course of being processed: the coal processing plants to which Stroh delivered coal processed raw coal for use by retail consumers. We agree that if the processing plant to which he delivered had purchased and processed raw coal for its own consumption, Stroh would not have satisfied the "function" requirement. *McKee v. Director, OWEP,* 2 BLR 1–804 (1980). But the processing plant to which Stroh delivered was not an ultimate consumer, and the coal hauled by claimant to that plant was not yet a finished product in the stream of commerce. *Id.* at 1–97.

We believe that the BRB's addition of a separate status prong is contrary to both the language and goals of the BLA. First, we think that, as described by the BRB, the "status" prong is best understood as subsumed within the "function" test. Even as defined by the BRB, the latter test requires that "claimant's function ... be integral to the extraction or preparation of coal, not ancillary to the delivery and commercial use of processed coal." This test already includes a requirement that a claimant participate in either the extraction or processing of coal.

Insofar as the "status" requirement means anything other than this, we think that it is inconsistent with the regulations promulgated by the Secretary of Labor which make clear that self-employed individuals can be miners if they satisfy all other aspects of the definition. See 20

C.F.R. 725.202(a), quoted above. If no-one could be a miner if he worked with coal which has "enter[ed] the stream of commerce," and if coal "enter[ed] the stream of commerce" whenever it was sold, then many self-employed individuals who performed jobs reached by the Black Lung Act would be excluded from coverage simply because they were self-employed. That result is clearly excluded by the above-cited regulation.

Further, the addition of a requirement that miners work only with "coal which is being processed" would, if taken literally, exclude from the definition of "miner" the people who actually extract coal from the ground. Those are of course the people most clearly within the word's definition, as indicated by the word's meaning in common parlance and by the BLA's legislative history. If thus defined, the term "miner" would also exclude transportation workers, although the BLA was amended precisely in order to ensure that transportation workers are reached. *See* the discussion in Part II of this opinion, *citing* 30 U.S.C. § 902(d). The status prong is unnecessary for this reason as well.[4]

Apparently as a part of its analysis of the "status" test, the BRB stressed the fact that Stroh transported coal "on public roads rather than in or around a coal mine." *Id.* The BRB appears to have relied in part upon this fact in concluding that the coal Stroh handled was in the "stream of commerce." We think such reliance was misplaced, for the same reason that we have rejected application of a "status" requirement different from the "function" prong of the BCA's definition of miner.

A rule that transportation workers could be miners under the BLA only if they did not transport coal on public roads would exclude many self-employed drivers from

**4.** In *Roberts v. Weinberger,* 527 F.2d 600 (4th Cir.1975) at 602, it was held that transporting coal from the excavation site to the processing plant so that it could be prepared for sale was "part of the process of 'extracting the coal and preparing the coal so extracted.'" *Roberts* plainly supports our determination, as do a number of other cases. *See, e.g., Adelsberger v. Mathews,* 543 F.2d 82 (7th Cir.1976); *Amigo Smokeless Coal Co. v. Director, Office of Workers' Compensation Programs. U.S. Department of Labor,* 642 F.2d 68 (4th Cir.1981).

the Act's protection, as well as many employees of custom coal preparation facilities. We have already explained why exclusion of self-employed transportation workers is contrary to regulations promulgated by the Secretary of Labor. In addition, custom processing plants are explicitly included within the BLA's definition of coal mine. See 320 U.S.C. § 902(d). Yet if drivers were excluded from the definition of "miner" simply because they drove on public roads, many such plants would be excluded from the definition of "coal mine," because custom coal preparation facilities are often located outside the boundaries of the independent mines whose coal they process. This is particularly true in Northeastern Pennsylvania, where the economic organization and geographic configuration of the mining industry makes it necessary for transportation workers to use public roads to haul raw coal from independent mines to independent breakers.

To find that a transportation worker is not a miner because he has to use public roads would be contrary to the Congressional intent, for it would exclude those transportation workers who work in a geographic area, such as Northeastern Pennsylvania, that is riddled with valleys and mountains, and where it is therefore necessary for truckers to use circuitous routes. It would also exclude transportation workers in areas where the industry tends to operate small independent mines that do not operate processing plants.

We think the better approach is the one consistently followed by the courts. "Miner" should continue to be defined according to the two-prong "situs" and "function" test. Both of those requirements are satisfied in this case. Therefore Stroh is a "miner" for purposes of the BLA.

### III.

We hold that claimant's work with respect to the transportation of coal brings him within Congress' definition of "miner." However, the presumption that the pneumoconiosis arose out of such employment "is available only if a miner ... was employed for 10 years of more in such coal mine employment." 30 U.S.C. § 921(c)(1). Because the record is not sufficiently developed with respect to the time period during which the claimant performed work transporting coal from independent mines to a processing plant or plants, we must remand the case to the ALJ for further findings of fact on this issue. If the ALJ finds on remand the claimant has 10 or more years of coal mine employment, the ALJ must determine if the interim presumption under 20 C.F.R. 727.203 is applicable and if so whether the presumption has been rebutted.

The petition for review will therefore be granted and the case remanded to the agency for further proceedings consistent with this opinion.