865 F.2d 1256
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
E. Faye BRANSON, Surviving daughter of Ella Bird, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 87-3635.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Nov. 14, 1988.
Decided: Jan. 6, 1989.
 
 John Payne Scherer, Sr. (File, Payne, Scherer & Brown), for petitioner.
 George R. Salem, Donald S. Shire, Barbara J. Johnson, Patricia M. Nece (United States Department of Labor), for respondent.
 Before MURNAGHAN, ERVIN and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Faye Branson petitions for review of the Benefits Review Board's order affirming the administrative law judge's order denying her application for survivor's benefits allowable under the Black Lung Act, 30 U.S.C. Secs. 901 et seq [the Act]. The administrative law judge [ALJ] concluded that petitioner's deceased father was not a "miner" as that occupation is defined by the Act and regulations and that his survivors thus were not eligible for benefits. We find that the decisions and orders under review are supported by substantial evidence and are in accordance with law. Accordingly, we affirm the BRB's decision and order.
 
 
 2
 * Petitioner's father, James O. Bird, worked 26 years as a construction worker and as a coal briquette press operator for the Berwind Fuel Company, a subsidiary of the New River and Pocahontas Consolidation Coal Company. He died in March 1955. In January 1972 Mr. Bird's widow, Ella Bird, filed a claim for widow's benefits under the Act. Her claim was denied.
 
 
 3
 Mrs. Bird died in September 1975; her estate's claim for surviving widow's benefits was revived and pursued by her surviving daughter, Mrs. Faye Branson, the petitioner in this action. In July 1979 Mrs. Branson's survivor's claims were denied. In August 1981 Mrs. Branson requested, through counsel, a hearing before an administrative law judge. Her hearing was conducted in November 1985.
 
 
 4
 In a decision and order issued January 28, 1986, the ALJ denied Mrs. Branson's application. The ALJ's decision was grounded on his conclusion that James O. Bird's employment at the briquette plant "does not constitute coal mine employment even though the employee is exposed to heavy coal dust as a result," citing as authority Zimmerman v. Director, Office of Workers' Compensation Programs, 6 BLR 1-658 (1983), aff'd, 749 F.2d 29 (3d Cir.1984) (unpublished) (employee of charcoal briquette production facility was not a miner under the Act because briquette manufacturing is separate from coal extraction and preparation processes). The ALJ did not determine whether Bird was totally disabled by pneumoconiosis at the time of his death or whether his death was caused by the disease.
 
 
 5
 On appeal to the BRB petitioner sought to distinguish Zimmerman on a minor factual difference: The claimant in Zimmerman was employed by a briquette manufacturer--the Reading Briquet Company--not a coal company; in the instant case petitioner's father was employed by a coal mining company--the New River and Pocahontas Consolidation Coal Company--which was the parent corporation for his immediate employer, the Berwind Fuel Company. Thus, as petitioner's brief to the BRB stated it, "James O. Bird, therefore, worked for a coal company and not a briquette company as was the fact in the Glen Zimmerman case."
 
 
 6
 The BRB summarily affirmed the ALJ's decision and order on the authority of Zimmerman: "The record clearly indicates that Mr. Bird was never directly employed in or around a coal mine or coal preparation facility as required by the Act." Petitioner assigns this conclusion as reversible error in this review proceeding.
 
 II
 
 7
 The Benefits Review Board's scope of review of administrative law judges' decisions and orders is governed by statute and regulation:
 
 
 8
 The Benefits Review Board is not empowered to engage in a de novo proceeding or unrestricted review of a case brought before it. The Board is authorized to review the findings of fact and conclusions of law on which the decision or order appealed from was based. Such findings of fact and conclusions of law may be set aside only if they are not, in the judgment of the Board, supported by substantial evidence in the record considered as a whole or in accordance with law.
 
 
 9
 20 C.F.R. Sec. 802.301 (1987); 33 U.S.C. Sec. 921(b)(3), incorporated into the Act by 30 U.S.C. Sec. 932(a). Zbosnik v. Badger Coal Co., 759 F.2d 1187, 1189-90 (4th Cir.1985); Wilson v. Benefits Review Board, 748 F.2d 198, 199-200 (4th Cir.1984). This Court reviews only for errors of law, including whether the BRB has used the proper standard of review in considering the ALJ's decision and order. See Amigo Smokeless Coal Co. v. Director, Office of Workers' Compensation Programs, 642 F.2d 68, 69 (4th Cir.1981); see also Zbosnik, 759 F.2d at 1189-90, and Eplion v. Director, Office of Workers' Compensation Programs, 794 F.2d 935, 936 (4th Cir.1986). To determine whether the BRB has properly adhered to its scope of review, the Court must make an independent review of the record and decide whether the ALJ's findings are supported by substantial evidence. Sun Shipbuilding & Dry Dock Co. v. McCabe, 593 F.2d 234, 237 (3d Cir.1979), cited in Amigo, 642 F.2d at 69.
 
 
 10
 Our review of the record as a whole, including the parties' briefs, discloses that there is substantial evidence to support the ALJ's conclusion that briquette manufacturing does not qualify as "coal mining" as that activity is defined by the regulations and that petitioner's deceased father thus was not a "coal miner" by definition.
 
 III
 A "miner" is defined by the Act as
 
 11
 any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal. Such term also includes an individual who works or has worked in coal mine construction or transportation in or around a coal mine, to the extent such individual was exposed to coal dust, as a result of such employment.
 
 
 12
 30 U.S.C. Sec. 902(d); see also 20 C.F.R. Sec. 725.101(a)(26) (1987). The regulations further define a "coal mine" as
 
 
 13
 an area of land and all structures ... and other property ... placed upon, under or above the surface of such land ... used in ... extracting ... bituminous coal, lignite or anthracite from its natural deposits in the earth ... and in the work of preparing the coal so extracted,....
 
 
 14
 20 C.F.R. Sec. 725.101(a)(23) (1987). Finally, the regulations define "coal preparation" as
 
 
 15
 the breaking, crushing, sizing, cleaning, washing, drying, mixing, storing and loading of ... coal ... and such other work of preparing coal as is usually done by the operator of a coal mine.
 
 
 16
 20 C.F.R. Sec. 725.101(a)(25) (1987).
 
 
 17
 A two-pronged test, referred to as the "situs-function" test, has been developed for determining whether one qualifies as a "miner": First, the work must have been performed in or around the situs of an active coal mine or coal preparation facility as defined above; second, the work itself must involve, or be integral to, the extraction or preparation of coal. Failure to satisfy either element of the test precludes a finding that a worker is a "miner." See, e.g., Collins v. Director, Office of Workers' Compensation Programs, 795 F.2d 368 (4th Cir.1986) (driver who hauled slate--a coal by-product, but not "coal"--away from tipple was not involved in coal extraction or mining and was not a "miner"); Eplion v. Director, Office of Workers' Compensation Programs, 794 F.2d 935 (4th Cir.1986) (worker was not a "miner" where his only contact with coal occurred after it had been processed and delivered for market and his duty was to knock open rail cars for dumping coal onto barges); cf. Amigo Smokeless Coal Co., supra (a laboratory technician who collected coal samples for processing and analysis was engaged in preparing coal and thus was a "miner"); Sexton v. Mathews, 538 F.2d 88 (4th Cir.1976) (shoveling coal from tipple into lorry qualified worker as "miner"); Adelsberger v. Mathews, 543 F.2d 82 (7th Cir.1976) (clerical worker who directed switching of coal gates and cars, oversaw coal weighing, and determined methods for transhipments of coal, was a "miner"); Roberts v. Weinberger, 527 F.2d 600 (4th Cir.1975) (truck driver hauling coal from extraction point to tipple for loading onto rail cars was a "miner").
 
 
 18
 Application of the situs-function test to the facts of this case reveals that the decedent's work was with coal that had completed the extraction and preparation stages and had entered into a separate manufacturing process for a commercial use, thus failing the function test. Quite simply, briquette-making is not coal mining and briquette makers are not coal miners.
 
 
 19
 We conclude that the ALJ's denial of benefits and the BRB's affirmance of his denial are supported by substantial evidence in the record and are in accordance with law. We also find that the facts and legal arguments are adequately presented in the parties' briefs and joint-appendix and that the decisional process would not be significantly aided by oral argument; consequently, we dispense with oral argument pursuant to Fed.R.App.P. 34(a) and Loc.R. 34(a).
 
 
 20
 AFFIRMED.