**DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,**

v.

**CONSOLIDATION COAL COMPANY; Megan Krushansky, widow of Charles Krushansky, Respondents.**

No. 89–3363.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 2, 1990.

Decided Jan. 14, 1991.

Rita A. Roppolo, argued (Robert P. Davis, Sol. of Labor, Donald S. Shire, Associate Sol. for Black Lung Benefits, Michael J. Denney, Counsel for Appellate Litigation, Office of the Sol., U.S. Dept. of Labor, on brief), Washington, D.C., for petitioner.

William Steele Mattingly, Jackson & Kelly, Morgantown, W. Va., for respondents.

Before PHILLIPS and CHAPMAN, Circuit Judges, and HOUCK, United States District Judge for the District of South Carolina, sitting by designation.

CHAPMAN, Circuit Judge:

The Director of the Office of Workers' Compensation Programs ("Director") appeals the decision of the Benefits Review Board ("the Board") affirming the Administrative Law Judge's ("ALJ") finding that Charles Krushansky was not a "miner" under the Black Lung Benefits Act (the "Act") while employed as a riverman by Consolidation Coal Company ("Consolidation"). Since Mr. Krushansky was not a miner while employed by Consolidation, the ALJ found that Consolidation was not liable for survivor benefits to which the Department of Labor ("DOL") determined Mrs. Krushansky was entitled.[1] The Director contends that the ALJ erred in finding that Mr. Krushansky's work as a riverman at Consolidation failed to qualify him as a miner under the Act. We disagree and affirm the Board's order.

## I.

Mrs. Krushansky, the claimant, is the surviving widow of Charles Krushansky, who died in 1981. Mr. Krushansky worked for over thirty years for Consolidation as a slate picker, timberman, coal grader, car dropper and riverman. His work as a riverman from 1956 to 1977 is the subject of this suit. During that time period, Mr. Krushansky performed his duties at a dock house which was located approximately three hundred yards from Consolidation's preparation plant and within one-half mile and several miles, respectively, from the company's two coal mines. A conveyor belt crossed a highway carrying the coal from the preparation plant to the dock facility. Mr. Krushansky's job predominately involved loading coal onto river barges. Other duties included maintaining the equipment which loaded the barges, main-taining the barges themselves, and moving loaded barges to the loaded fleet area. At times he retrieved small amounts of coal as it passed through the dock house which he crushed for laboratory analysis.

Both Mr. Krushansky and, after his death, his widow applied for benefits under the Act. The DOL initially denied both claims but, after reviewing additional evidence, found Mrs. Krushansky entitled to survivor benefits. The DOL then notified Consolidation of its potential liability. Consolidation denied its liability, asserting that Mr. Krushansky did not work as a miner when employed by the company during the relevant time period and that it had not been established that Mr. Krushansky was totally disabled due to or died from pneumoconiosis.[2] A hearing was held before an ALJ, and an order was issued finding that Mr. Krushansky's job as a riverman was not coal mine employment and dismissing Consolidation from liability.[3] The ALJ remanded the case to the DOL for payment of the benefits. The Board, finding the order was supported by substantial evidence, affirmed the ALJ's decision.

## II.

Our review of the Board's order is governed by section 21 of the Longshoreman's and Harbor Workers' Compensation Act, 33 U.S.C. § 921. 30 U.S.C. § 932(a) (1988); *Amigo Smokeless Coal Co. v. Director, OWCP*, 642 F.2d 68, 69 n. 2 (4th Cir.1981). The Board's resolution of questions of statutory construction or application of the Act to a particular set of facts must be upheld if supported by a reasonable factual and legal basis. *Amigo Smokeless Coal Co.*, 642 F.2d at 69. The Board must affirm the findings of the ALJ

---

1. The DOL does not dispute Mrs. Krushansky's entitlement to survivor's benefits. Therefore, if it is determined that Mr. Krushansky was not a miner while employed with Consolidation, Mrs. Krushansky will still receive the benefits to which she is entitled, but they will be paid by the Black Lung Disability Trust Fund. The Black Lung Disability Trust Fund was established in 1977 to pay benefits to eligible miners when no responsible operator can be found or made to pay. 30 U.S.C. §§ 934, 934a.

2. For a coal mine operator to be liable for benefits under the Act, the claimant or the claimant's spouse must have been employed as a miner after December 31, 1969. 30 U.S.C. § 932(j) (1988).

3. Because the ALJ found that Mr. Krushansky was not employed by Consolidation as a miner during the relevant time period, the issue regarding pneumoconiosis was not addressed.

if they are supported by substantial evidence. 33 U.S.C. § 921(b)(3) (1988); *Zbosnik v. Badger Coal Co.*, 759 F.2d 1187, 1189 (4th Cir.1985).

### III.

The sole issue on appeal is whether the ALJ correctly found that Mr. Krushansky was not a miner within the meaning of the Act while employed by Consolidation as a riverman. Miner is defined in the Act as:

 any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal. Such term also includes an individual who works or has worked in coal mine construction or transportation in or around a coal mine, to the extent such individual was exposed to coal dust as a result of such employment.

30 U.S.C. § 902(d) (1988).

A coal mine is defined as:

an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations, and other property, real or personal, placed upon, under, or above the surface of such land by any person, used in or to be used in, or resulting from, the work of extracting in such area bituminous coal, lignite, or anthracite from its natural deposits in the earth by any means or method, and the work of preparing the coal so extracted, and includes custom coal preparation facilities.

30 U.S.C. § 802(h)(2) (1988).

The work of preparing coal includes:

breaking, crushing, sizing, cleaning, washing, drying, mixing, storing and loading of bituminous coal, lignite, or anthracite, and such other work of preparing such coal as is usually done by the operator of a coal mine.

30 U.S.C. § 802(i) (1988).

 From these definitions, a two-prong test has been established to determine if an employee is a miner. First, the individual must have worked in or around a coal mine (the situs requirement); second, the individual must have been employed in the extraction or preparation of coal (the function requirement). *Amigo Smokeless Coal Co.*, 642 F.2d at 70. Coal is not considered beyond the preparation stage until it is processed and prepared for market. *Eplion v. Director, OWCP*, 794 F.2d 935, 937 (4th Cir.1986). Therefore, whether the coal has been prepared for market is a critical inquiry. In a recent case, *Norfolk & W. Ry. v. Roberson*, 918 F.2d 1144, 1150 (4th Cir.1990), we held that a railroad employee who transported raw coal to a preparation plant was a miner under the Act; however, we emphasized that once the coal is prepared and reloaded for shipment, a railroad employee would not satisfy the function requirement.

In this case, the ALJ determined that neither prong was satisfied. The ALJ found that Mr. Krushansky worked with coal which had been prepared for market and had already entered the stream of commerce. Accordingly, the ALJ determined that the dock facility was not involved in the extraction or preparation of coal. The ALJ relied on this court's holding in *Eplion v. Director, OWCP*, 794 F.2d 935 (4th Cir. 1986). In that case, the claimant loaded prepared coal onto barges at a river facility. The coal was transported from Logan, West Virginia, by railroad car to the river loading facility in Huntington, West Virginia. This court affirmed the ALJ's determination that Eplion was not a miner, since he was involved in the transportation and distribution of coal after it was processed and prepared for market. *Id.* at 937. The only distinction between that case and the one here is the distance between the preparation plant and the loading facility. That difference is not determinative.

 In this case, Mr. Krushansky worked at a dock house loading facility three hundred yards from the preparation plant. The coal was blended and prepared for market at the preparation plant before being placed on the conveyor belt to the dock house. The Director concedes that the coal had already gone through the tipple, the usual place of loading, before reaching the dock house. In *Collins v. Director, OWCP*, 795 F.2d 368 (4th Cir. 1986), this court held that an employee who

hauled slate from a tipple was not a miner. The court stated:

> Traditionally the tipple marks the demarcation point between the mining and the marketing of coal. It is at that structure that the screening of the coal occurs and the final product is loaded for transport. When coal leaves the tipple, extraction and preparation are complete and it is entering the stream of commerce. While individuals who come in contact with the coal at this interval or later may still suffer a harmful exposure to coal dust, they are not within the class protected by the black lung statute.

*Id.* at 372. Here the coal which reached the dock house was not coal in preparation. Accordingly, we find that the ALJ's findings and conclusions that neither the situs nor function requirements were met are supported by substantial evidence and in accordance with law.

The ALJ further found that the crushing of coal samples for laboratory analysis was not integral to the extraction or preparation of coal. That duty is ancillary to the transportation of coal to the ultimate consumer, and it was not performed in or around a coal mine. *See Bower v. Amigo Smokeless Coal Co.*, 11 BRBS 582, 589–90 (1979), *aff'd sub nom. Amigo Smokeless Coal Co. v. Director, OWCP*, 642 F.2d 68 (4th Cir.1981). Since Mr. Krushansky crushed coal that had already entered the stream of commerce, this activity does not satisfy the function test nor change the character of the dock house to a mine in satisfaction of the situs requirement.

### IV.

Based on the foregoing, we find that the ALJ's determinations that the claimant met neither the situs nor the function requirements are supported by substantial evidence. Accordingly, the decision of the Board is

AFFIRMED.