**Otto L. FOX, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 88–7742.

United States Court of Appeals, Eleventh Circuit.

Dec. 6, 1989.

William G. Veitch, Birmingham, Ala., John C. Rockette, Bessemer, Ala., for petitioner.

Before TJOFLAT, Chief Judge, CLARK, Circuit Judge and SMITH *, Senior Circuit Judge.

EDWARD S. SMITH, Senior Circuit Judge.

■ Appellant Otto L. Fox appeals the determination of the Benefits Review Board (Board) that he is not a "miner" under the Black Lung Benefits Act (Act), 30 U.S.C. § 901 *et seq.*, and is not entitled to benefits thereunder. The decision of the Board, based on its conclusion that appellant's duties at a coke oven, a consumer of coal, cannot constitute coal preparation under the Act, is *affirmed.*

### Issue

The question presented is whether the Board erred in reversing the ruling of the Administrative Law Judge (ALJ) that Fox was a miner within the meaning of the Act. If the coal processing activities engaged in by the employer and actually performed by the claimant Fox constitute "preparing the coal" as contemplated in the Act and implementing regulations, Fox is a miner within the meaning of the Act and is entitled to benefits under the provisions thereof.

### Background

The facts pertinent to this appeal are as follows: Otto L. Fox worked in the mechanical department of the Woodward Coke Plant, Woodward, Alabama, from September 1943 until he retired at the age of 62 in February 1977. The coke plant received unprocessed coal transported by rail directly from the Mulga strip mine 8–10 miles away. Except for a short period near the end of appellant's tenure, these strip mines were owned and operated by the parent companies of the coke preparation facility. After the unprocessed minerals were dumped from the railroad cars, conveyors transferred the coal to a washer for removal of impurities such as slate and dirt. The coal was then crushed and transported by belt to the top house for storage. The coal fines stored in the top house were subsequently processed in coke ovens located on the same site.

For the last 16 years of his employment, appellant worked as a mechanic maintaining the washer and crusher in the coal preparation area of the Woodward facility. During the course of his employment as a mechanic, appellant was exposed to significant amounts of coal dust, so in October

*footnote:*
\* Honorable Edward S. Smith, Senior U.S. Court of Appeals Judge for the Federal Circuit, sitting by designation.

1970, he filed a claim with the Social Security Administration (SSA) for benefits under Part B of the Black Lung Benefits Act,[1] as amended, 30 U.S.C. §§ 901–945 (1982). After the SSA denied the Part B claim, appellant filed a claim for benefits with the Department of Labor under Part C[2] of the Act. The Deputy Commissioner of Labor considered the Part C claim along with the previously denied Part B claim and in 1979 initially determined that Fox was entitled to benefits. The Deputy Commissioner later reversed this finding in 1981 on the ground that the claimant was not a coal miner within the meaning of the Act. At Fox's request, the case was referred to the Office of Administrative Law Judges for a formal hearing.

At the December 1985 hearing, the ALJ determined that appellant's employment as a mechanic in the coal preparation facility of the coke plant constituted coal mine employment within the meaning of the Act. The ALJ found that washing and crushing were necessary preparation functions that might be performed by the mine operator at the mine site. Relying primarily on *Sexton v. Mathews*, 538 F.2d 88 (4th Cir.1976), the ALJ concluded that Fox was engaged in coal preparation as that term is defined in 20 C.F.R. § 725.101(a)(25). The ALJ read *Sexton* as holding that since Fox's duties at the coke oven constituted coal preparation, Fox met the statutory definition of a miner, 20 C.F.R. § 725.101(a)(26), and was therefore entitled to benefits.

■ The Director, Office of Worker's Compensation Programs (Director), appealed to the Board, contending that the ALJ erred in finding appellant to be a miner during his employment at the Woodward

Coke coal preparation facility. The Board reversed, holding that the claimant's work failed to satisfy its three part "situs-function-status of the coal" test[3]. To establish that his work constituted "coal mine employment" under this test, the claimant must show (1) that his work took place in or around a coal mine or coal preparation facility (situs test), (2) that the work performed was integral to the extraction or preparation of coal (function test), and (3) that the coal with which he worked was still in the course of being processed, i.e. not yet a finished product in the stream of commerce (status of the coal test). The Board reasoned that a coke manufacturing plant was not a coal mine or coal preparation facility as those terms are defined under the Act.[4] Fox also failed to satisfy the function test since his work involved the utilization of coal for a particular industrial process apart from the coal industry.[5] The Board noted in conclusion that the coke plant was a consumer of coal, not a producer of the mineral, so Fox could not be a miner engaged in coal preparation as contemplated by the provisions of the Act.[6] Fox now appeals the Board's decision to this court.

### The Standard of Review

The Benefits Review Board is required to affirm an ALJ's decision if it is in accordance with law and supported by substantial evidence from the entire record.[7] The scope of our review in this case is limited to determining whether the Board erred in reversing the ALJ's decision.[8]

### The Statutory Language

Congress has provided that black lung benefits are available only to disabled coal

1. See 20 C.F.R. § 725.1(b) (1988).

2. See 20 C.F.R. § 725.1(d) (1988).

3. See Whisman v. Director, OWCP, 8 Black Lung Rep. (MB) 1–96 (Ben.Rev.Bd.1985).

4. Trull v. Director, OWCP, 7 Black Lung Rep. 1–380 (MB) (Ben.Rev.Bd.1984), McKee v. Director, OWCP, 2 Black Lung Rep. (MB) 1–804 (Ben.Rev.Bd.1980).

5. Id.

6. Foreman v. Director, OWCP, 794 F.2d 569 (11th Cir.1986).

7. Frederick v. Director, OWCP, 808 F.2d 813, 815 (11th Cir.1987); 33 U.S.C. § 921(b)(3) as incorporated by 30 U.S.C. § 932(a); 20 C.F.R. § 802.301 (1988).

8. Baker v. United States Steel Corp., 867 F.2d 1297, 1298 (11th Cir.1989); Stomps v. Director, OWCP, 816 F.2d 1533, 1534 (11th Cir.1987); Foreman v. Director, OWCP, 794 F.2d 569, 570 (11th Cir.1986).

miners and their survivors,[9] so employment as a miner is a threshold criterion which must be satisfied by a claimant before any determination of entitlement may be made.[10] The Act defines "miner" as follows: "The term miner means any individual who works in or around a coal mine or coal preparation facility in the extraction or preparation of coal ...".[11]

The Act defines the term "coal mine" as: "... an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations, and other property, real or personal, placed upon, under, or above the surface of such land by any person, used in, or to be used in, or resulting from, the work of extracting in such area bituminous coal ... from its natural deposits in the earth by any means or method, and the work of preparing the coal so extracted ..."[12] Stripping away the descriptive verbiage, we note that the term coal mine is functionally defined in a manner similar to the term miner, as an area of land used in the *work of coal extraction and the work of preparing the coal so extracted.*[13]

But what is "coal preparation"? The Act provides the following definition: "... the breaking, crushing, sizing, cleaning, washing, drying, mixing, storing and loading of ... coal ... and such other work of preparing such coal as is usually done by the operator of a coal mine ..."[14]

As noted above, the ALJ ruled that washing and crushing at the coke plant were necessary preparation functions that might be performed by the mine operator at the mine site. This analysis focuses on "such other work of preparing such coal as is usually done by the operator of a coal mine" and applies this phrase as a comparable coal mine test. The ALJ's analysis here violates the "ejusdem generis" rule of statutory construction:[15] the language should not extend the definition of coal mine under the Act, but should be construed as a non-exclusive definition of the types of work, *occurring on a coal mine site,* which may constitute coal preparation.[16]

The legislative history of the Act indicates that while Congress recognized coal dust adversely affects the health of workers in many occupations, coverage of coal preparation activities is contingent on such activities being an integral part of the coal production process. The processing and use of the minerals by subsequent consumers is not a part of that process. This intent to limit the coverage of the Act is apparent from the following excerpt explaining the expanded definition of the term "miner" under the Black Lung Benefits Reform Act of 1977: "The provision does not contemplate inclusion of those workers employed by a railroad, trucking company, or barge line ... *Nor does it include such individuals not directly related to the production of coal such as coke oven workers. These exclusions are not the result of any judgment that such workers should not be compensated for occupational disease—they are merely beyond the scope of this legislation."*[17] Congress clearly intended to create a boundary beyond which coal processing activities (such as coke production) performed

---

9. 30 U.S.C. § 921(a).

10. *Baker,* 867 F.2d at 1298.

11. 30 U.S.C. § 902(d). *See also* 20 C.F.R. §§ 725.101(a)(26), 725.202(a) (1988).

12. 30 U.S.C. § 802(h)(2), 20 C.F.R. § 725.101(a)(23) (1985).

13. *See McKee v. Director, OWCP,* 2 Black Lung Rep. (MB) 1–804, 1–806 (Ben.Rev.Bd.1980) (emphasis added).

14. 30 U.S.C. § 802(i), 20 C.F.R. § 725.101(a)(25) (1988).

15. The rule may be generally stated as follows: "Where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." *Black's Law Dictionary,* (5th ed. 1979); *See also McKee v. Director, OWCP,* 2 Black Lung Rep. at 1–807.

16. *McKee,* 2 Black Lung Rep. at 1–807.

17. S.Rep. No. 209, 95th Cong., 1st Sess. 21 (1977) (emphasis added).

by the ultimate consumer for his own use would not be covered under the Act. Where the legislature has clearly established a boundary, that limit may not be judicially extended.

### The Case Law

In rejecting appellant's application for benefits, the board relied on two of its earlier decisions which considered whether coal handlers in particular occupations were miners under the Act. In *McKee v. Director, OWCP*,[18] a cement plant obtained coal from a local strip mining concern and subsequently crushed it for use in the company's furnaces. The claimant, who operated the cement plant crusher, was held not to be a miner under the Act because "The coal processing undertaken by the cement manufacturing company constituted utilization of the coal for a particular industrial process separate and apart from the coal producing industry." [19]

Similarly, in *Trull v. Director, OWCP*,[20] claimant's duties consisted of washing and crushing the operator's unprocessed coal for use in a coke oven. The Board relied on *McKee* to hold that the claimant was not a miner under the Act since the coal preparation at the coke facility facilitated the consumption of coal for use in a particular industrial process.[21]

Consistent with Congressional intent limiting the Act's coverage to those employes engaged in coal production, this and other courts of appeals have interpreted the statutory definition of a miner as requiring a claimant to establish two elements: (1) that he was employed at a statutorily defined coal mine situs and (2) that he performed duties related to the extraction and preparation of coal.[22] Unfortunately, the ALJ's decision under examination here did not apply this two part test. The analysis performed by the ALJ relied principally on the rationale of *Sexton v. Mathews* [23] in holding that Fox's duties at Woodward Coke constituted "coal preparation" under the Act. This goes toward the function requirement, the second prong of the test procedure. The situs requirement received little or no attention in the ALJ's opinion; the decision apparently holds that the situs requirement is satisfied since the coke preparation facility conducted "coal preparation" (washing and crushing) which could possibly have been performed at the mine site. The principal focus of our inquiry here will be the function requirement.

In *Johnson v. Weinberger*,[24] the court considered whether an employee who operated a coal crusher at a chemical plant was a miner under the Act. "While there is no question that the plaintiff worked in an atmosphere which was filled with coal dust, the work he performed was not the preparation of coal as contemplated by the applicable law and regulations. 'Preparation of coal' relates to the preparation of coal brought out of the mine prior to its shipment and use in related commercial facilities. In the instant case, plaintiff did not prepare coal after extraction from the mine in order to ship it to a commercial user. He was, in fact, the employee of a commercial user. His job was preparation of the coal for peculiar use of his employer, ...." [25]

In *Foreman v. Director, OWCP*,[26] this court considered whether a boiler room

---

18. 2 Black Lung Rep. (MB) 1–804 (Ben.Rev.Bd. 1980). *McKee* was decided under the Act as amended to 1972. However, the Board has held that the 1977 Act does not expand coverage beyond the level of the 1972 Act as construed in *McKee. See Ferris v. Director, OWCP*, 3 Black Lung Rep 1–320 (MB) (Ben.Rev.Bd.1981).

19. *McKee*, 2 Black Lung Rep. at 1–813.

20. 7 Black Lung Rep. 1–380 (MB) (Ben.Rev.Bd. 1984).

21. *Id.* at 1–381.

22. *Baker*, 867 F.2d at 1298; *Foreman*, 794 F.2d at 570; *Stroh v. Director, OWCP*, 810 F.2d 61 (3d Cir.1987); *Amigo Smokeless Coal Co. v. Director, OWCP*, 642 F.2d 68, 69 (4th Cir.1981); *Southard v. Director, OWCP*, 732 F.2d 66, 69 (6th Cir. 1984).

23. 538 F.2d 88 (4th Cir.1975).

24. 389 F.Supp. 1296 (S.D.W.Va.1974).

25. *Id.* at 1298.

26. 794 F.2d 569 (11th Cir.1986).

fireman employed by a steel producer that utilized coal from company owned mines was a miner under the Act. The court concluded that the claimant was not engaged in the extraction and preparation of coal within the meaning of the Act since he was employed by a coal consumer.[27] All of the subject employee's tasks related to the consumption of coal at the ore mine power plant. While the coal was processed on site, the processing was required solely to satisfy the particular needs of the power plant consumer, so the claimant was not a miner engaged in the preparation of coal.[28]

Appellant stated in the present case that the washing and crushing machines processed the raw coal to produce a divided product for use in the production of coke. The coal preparation performed at Woodward was not of the variety engaged in by a coal mine operator. Woodward Coke utilized coal as a raw material in the manufacture of coke; the plant operated as a consumer of coal, not as a processor of the mineral for further distribution.

▨ Since Woodward utilized coal from company owned mines, Appellant asserts that he was engaged in the preparation of coal under the Act. This argument misses the mark. The fact that a company owns and operates its own coal mines does not bring workers employed at its other coal utilization facilities under the umbrella of the Act's coverage.[29] Benefits under this act must be denied to those who work with coal once it has been processed by the mine and shipped to consumers.[30] Whether or not these consumers are a part of the same corporate entity which initially extracted the coal is of little use in an attempt to determine if an employee performed coal preparation work as contemplated by the Act.

Finally, the ALJ's reliance on *Sexton v. Mathews* [31] is misplaced. In *Sexton,* the claimant performed several different duties for the employer. His work shoveling coal from a tipple on the mine site to a lorry for delivery to a coke oven was held to be coal mine employment under the Act. "Since loading coal at a coal mine is considered a part of preparing coal, we perceive no sound reason for excluding the loading of coal *at a mine* simply because it is to be hauled to a coke oven." [32] However, the court further concluded that the employee's other duties loading coal into a coke oven did not qualify him for benefits under the Act despite the fact that the oven was owned by the coal company.[33] Claimant Sexton's coal shoveling duties were incident to the process of extracting coal and preparing it for market but his coke oven work was incident to the consumption of coal for a particular use of his employer. As noted above, Fox worked at a coke manufacturing facility which consumed coal to produce a specific product. Under the rationale of *Sexton,* he is not a coal miner within the meaning of the Act.

### Conclusion

Given our understanding of the operation of the Woodward Coke facility, it appears clear that the washing and crushing of coal performed there were the first steps in the coke manufacturing process rather than the last step in the coal extraction and preparation process. The facility indeed performed operations on the raw coal such as those listed in the statutory definition of coal preparation, 30 U.S.C. § 802(i), but this is insufficient to establish that the facility is a coal preparation plant under the Act when such operations are tailored to a spe-

27. *Id.,* at 571.

28. *Id.*

29. *Foreman,* 794 F.2d at 569, 571 (claimant held not a miner even though ore mine power plant where he worked utilized raw materials from company owned mines); *Johnson,* 389 F.Supp. at 1298 (chemical plant not a coal mine even though coal washed and crushed on site supplied from company owned mines); *Sexton v.* *Mathews,* 538 F.2d at 88–89 (work in coke ovens owned by mining company held not to be coal mine employment).

30. *Foreman,* 794 F.2d at 571.

31. 538 F.2d 88 (4th Cir.1975).

32. *Sexton,* 538 F.2d at 89 (emphasis added).

33. *Id.*

cific industrial purpose. Coal preparation activities which are an integral part of the coal production process are covered under the Act whereas the use a consumer makes of the coal it acquires is not covered. Appellant's job, readying coal for use by a commercial facility rather than preparing coal for shipment to the commercial user, is not work in the preparation of coal under the Act. It follows therefore that appellant cannot be a miner as that term is defined by the Act and implementing regulations.

Having so found, we need not address whether appellant's place of employment constituted a coal mine situs.

The ALJ clearly erred in determining that Fox was a miner within the meaning of the Act. Accordingly, the decision of the Board, which reversed this erroneous finding, is AFFIRMED.