**NORFOLK & WESTERN RAILWAY COMPANY, Petitioner,**

v.

**Olen R. ROBERSON; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents,**

**Association of American Railroads, Amicus Curiae.**

**No. 89–2192.**

United States Court of Appeals, Fourth Circuit.

Argued April 4, 1990.

Decided Nov. 16, 1990.

William Beverly Poff (argued), Clinton S. Morse, Woods, Rogers & Hazlegrove, Roanoke, Va., Douglas A. Smoot, Jackson & Kelly, Charleston, W.Va., on brief, for petitioner.

Elizabeth Hopkins (argued), Robert P. Davis, Solicitor of Labor, Allen H. Feldman, Associate Solicitor for Special Appellate and Supreme Court Litigation, Steven J. Mandel, for Appellate Litigation, U.S. Dept. of Labor, Washington, D.C., Lawrence Lee Moise, III, Robert Austin Vinyard, Vinyard and Moise, P.C., on brief, Abingdon, Va., for respondents.

J. Thomas Tidd, Daniel Saphire, Ass'n of American Railroads, Washington, D.C., Ralph J. Moore, Jr., John Townsend Rich, Alok Ahuja, Shea & Gardner, Washington, D.C., for amicus curiae.

Before WIDENER, PHILLIPS and WILKINSON *, Circuit Judges.

WIDENER, Circuit Judge:

Norfolk & Western Railway Company (N & W) petitions for review of a decision and order of the Benefits Review Board affirming an order of an Administrative Law Judge (ALJ) that awarded benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901 *et seq.* (Act), to Olen R. Roberson, a retired N & W employee. Both the ALJ and the Board concluded that N & W qualified as a coal mine operator under the Act and that Roberson qualified as a coal miner who was entitled to benefits. We affirm..

Olen R. Roberson worked as a brakeman and conductor for N & W from 1947 to 1979. The parties do not dispute that the initial and final periods of his employment, from 1947 to 1956 and from 1973 to his retirement in 1979, did not constitute coal mine employment. Between 1956 and 1973, however, Roberson worked on N & W runs that delivered empty railroad cars to mine sites to be loaded with raw coal and which then hauled the raw coal from the mines to a coal preparation plant where the coal was washed, cleaned, graded, and reloaded for further shipment.

One of the principal crews with which Roberson worked made the "Carbo Run," which originated in Carbo, Virginia.[1] This crew traveled from Carbo thirty miles to Richlands, Virginia, where it picked up empty coal cars and delivered them to a Jewel Ridge Coal Company mine located some six miles away. The crew then transported the raw coal back to Carbo to the Clinchfield Coal Company preparation plant, a distance of thirty-six miles. The entire run took twelve to fourteen hours to complete. Roberson's crew also transported raw coal to the Clinchfield preparation plant from mines in Duty, Virginia, an eight to ten mile run that could be accomplished two or three times in one day.

Roberson's duties included coupling and uncoupling high pressure air hoses between the cars, which blew coal dust into the air, setting and releasing brakes, and obtaining loading numbers and tags from the individual cars. Because most of Roberson's tasks were performed while the train was stationary, Roberson spent a significant portion of his workday at the mine sites and the preparation plant. At times, Roberson "walked" a hundred cars at a time. In addition, coal dust also blew off the tops of the loaded railroad cars during the trips between the mines and the preparation plant. Thus, although Roberson never participated in the actual loading or unloading of coal, he was continually exposed to large amounts of coal dust. Roberson applied for black lung benefits in 1978, one year before his retirement.

The ALJ determined that N & W's coal hauling activities qualified it as the respon-

---

* Judge Wilkinson was a member of the panel which heard oral argument in the case, but he later recused himself. The decision is filed by a quorum of the panel. 28 U.S.C. 46(d).

1. The ALJ credited Roberson with 14 years of coal mine employment based on his testimony that he worked on the Carbo Run a total of 14 years.

sible operator under the Act and that Roberson qualified as a miner who was entitled to benefits. Finally, the ALJ concluded pursuant to the interim presumption in 20 C.F.R. § 727.203(a) that Roberson is totally disabled from pneumoconiosis due to coal mine employment, and that N & W failed to rebut the presumption.[2] The Board found that each of the ALJ's conclusions was supported by substantial evidence. See 33 U.S.C. § 921(b)(3).

■■■ Our review of the Board's order is governed by section 21 of the Longshoreman's and Harbor Workers' Compensation Act, 33 U.S.C. § 921. 30 U.S.C. § 932(a). Specifically, we must uphold the Board's resolution of questions of statutory construction or application of the Act to a specific set of facts if it is supported by a reasonable factual and legal basis. *Eplion v. Director, OWCP*, 794 F.2d 935, 936 (4th Cir.1986). In addition, the Director urges us to adopt the Board's interpretation of the Act. Although the Board's interpretation standing alone is not entitled to special judicial deference, if the Director urges us to adopt the Board's interpretation, our analysis is governed by *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Newport News Shipbuilding & Dry Dock Co. v. Howard*, 904 F.2d 206, 208 (4th Cir.1990).

Under *Chevron* we first must ask whether Congress directly has addressed the precise issue in dispute. *Chevron*, 467 U.S. at 842, 104 S.Ct. at 2781. If so, the court and the agency must give effect to unambiguous Congressional intent. *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82. If Congressional intent is unclear or ambiguous, however, we must determine only whether the Director's interpretation is based on a permissible construction of the Act; we may not substitute our own construction of the Act for a reasonable one made by the Director. *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782–83; *Howard*, 904 F.2d at 209.

■ Our starting point, of course, is the language of the Act, which defines a miner as

> any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal. Such term also includes an individual who works or has worked in coal mine construction *or transportation in or around a coal mine, to the extent such individual was exposed to coal dust as a result of such employment.*

30 U.S.C. § 902(d) (emphasis added). Thus, the plain language of the statute requires the inclusion in the definition of miner of transportation workers who were involved "in the extraction or preparation of coal," who worked "in or around a coal mine," and who were "exposed to coal dust as a result of such employment." Because N & W does not dispute Roberson's exposure to coal dust, we turn to the other two inquiries, which often are described as the requirements of situs and function. *Eplion*, 794 F.2d at 937.

In affirming an order of the Board denying black lung benefits to a claimant whose job entailed knocking open doors to railroad cars so that coal could be loaded into barges, we emphasized that "[claimant] was not involved in transporting the coal before it was prepared. The coal was already processed and prepared for market before [claimant] had any contact with it." *Eplion*, 794 F.2d at 937. We concluded in *Eplion*, therefore, that the claimant failed to qualify as a miner under the Act because he did not meet the situs and function tests set forth in the statute.

In contrast to *Eplion*, the ALJ's undisputed findings of fact in this case are that Roberson was involved in hauling raw coal from extraction sites (mines) to the preparation plant, which also is considered a coal mine under the Act. See 30 U.S.C. § 802(h)(2). Transporting raw coal to a preparation plant plainly is part of the preparation of coal, and Roberson therefore satisfies the function test. In addi-

---

**2.** N & W does not challenge on review the findings of the ALJ and Board on this issue, so the Board's finding of disability stands as ordered.

tion, the ALJ specifically found that, because Roberson did a lot of his work while the train was parked at the mine sites and the preparation plant, Roberson spent "a significant portion of time" in or around a coal mine, as defined by the statute. Therefore, Roberson also satisfies the situs test.

Except for the mode of transportation involved, and perhaps the distance traveled, this case is indistinguishable from *Roberts v. Weinberger*, 527 F.2d 600 (4th Cir.1975). In *Roberts* we determined, three years before the 1978 amendment to the statute expressly included transportation workers in the definition of miner, that a truck driver who hauled coal between a strip mine and the tipple qualified as a miner entitled to benefits under the Act. Just as Roberson did in the case at hand, the truck driver in *Roberts* hauled coal from the extraction site to the tipple, where it was processed, graded, and reloaded for further shipment. *Roberts*, 527 F.2d at 601. We reasoned that the driver's functions

> were part of the process of "extracting the coal and preparing the coal so extracted." The coal was not extracted and prepared until it was taken from the mine to the place where it was processed and graded so as to be in condition for delivery to distributors and consumers.

*Roberts*, 527 F.2d at 602. Because we concluded in *Roberts* that the Act "is unambiguous in extending coverage" to the truck driver, *Roberts*, 527 F.2d at 602, we have little difficulty in concluding that the plain language of the Act, especially when reinforced by the 1978 amendment, manifests a clear Congressional intent to include in the definition of miner a small group of transportation workers of which Roberson was a member.

N & W advances several arguments in an attempt to distinguish *Roberts* and establish that railroad employees are fundamentally different from other transportation workers. First, it relies extensively on the legislative history to the 1978 amendments to the Act. Because we conclude that the plain language of the Act supports the Board's decision, however, we "must give effect to the unambiguously expressed intent of Congress," *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781, and we have no need to resort to the Act's legislative history.[3]

■ Second, N & W argues that allowing a railroad employee to recover under the Act would be inconsistent with other federal legislation that already protects railroad employees from disability or injury, such as the Federal Employers' Liability Act, 45 U.S.C. §§ 51 *et seq.*, the Railroad

---

**3.** Even if we found the language of the Act unclear and resorted to the legislative history, our result would be no different. N & W relies on Senate Report No. 209, 95th Cong., 1st Sess. 21 (1977), which states concerning the definition of miner that "[t]he provision does not contemplate inclusion of those workers employed by a railroad, trucking company, or barge line unless such company also operates a mine." The floor manager of the Senate bill, Senator Randolph, made a similar statement during floor debate. The Senate bill, however, did not prevail, and the subsequent Conference Committee Report contains no language excluding railroad workers or any other specific set of transportation workers from the definition of miner; indeed, the Conference Report sticks closely to the literal language of the statute, as have we. H.Conf.Rep. No. 864, 95th Cong., 2d Sess., *reprinted in* 2 U.S.Code Cong. & Admin. News 308–09 (1978). Because the Conference Report "represents the final statement of terms agreed upon by both houses of Congress, next to the statute itself, it is the most persuasive evidence of Congressional intent behind the enactment of a statute." *Davis v. Lukhard,* 788 F.2d 973, 981 (4th Cir.), *cert. denied,* 479 U.S. 868, 107 S.Ct. 231, 93 L.Ed.2d 157 (1986). Thus, even if we looked to the legislative history for guidance, the Director's interpretation of the Act still would be a permissible one that we should not set aside. *Chevron,* 467 U.S. at 843–44, 104 S.Ct. at 2781–82. N & W's reliance on *Fox v. Director, OWCP,* 889 F.2d 1037 (11th Cir.1989), which cited the Senate Report in the course of determining that a coke oven worker was not a miner, is unpersuasive. The *Fox* court did not explain why it resorted to the legislative history of a version of a bill that was not adopted, quite possibly because the passage was not essential to the court's holding. In light of the fact that a coke oven is a consumer of coal, the *Fox* court understandably found that the coke oven worker was not involved in the preparation of coal under the Act. *Fox,* 889 F.2d at 1042–43. ("[T]he processing and use of the minerals by subsequent consumers is not a part of that process." 889 F.2d at 1040.)

Retirement Act, 45 U.S.C. §§ 231 *et seq.,*[4] and the Railroad Unemployment Insurance Act, 45 U.S.C. §§ 351 *et seq.* We disagree. Not only do the statutes differ in certain material respects (the FELA, for example, requires employer negligence, 45 U.S.C. § 51, while the Black Lung Act does not), none of the other statutes indicate that Congress intended them to preclude the availability of other federal remedial legislation. Instead, the FELA, upon which N & W principally relies, does just the opposite. See 45 U.S.C. § 58 ("Nothing in this chapter shall be held to limit the duty or liability of common carriers or to impair the rights of their employees under any other Act or Acts of Congress."). So that argument is, we think, without merit.

■ N & W also contends that, as an industry exclusively regulated by the Interstate Commerce Commission (ICC), railroads are uniquely different from other carriers because all their services are considered to be part of interstate commerce. We know of no part of the Act, the regulations, or any reported case interpreting the Act or regulations, however, that distinguishes a common carrier or transportation worker on the basis of connections with interstate commerce. Indeed, in *Roberts* we found that the truck driver qualified as a miner despite conflicting evidence as to whether he was employed by the coal company or a trucking subcontractor. *Roberts,* 527 F.2d at 602. The Fifth Circuit recognized, in *Freeman v. Califano,* 600 F.2d 1057, 1060 & n. 2 (5th Cir.1979), that *Roberts* implicitly rejected an argument that the nature of the employer could make for differing results ("The Fourth Circuit evidently deemed this question unimportant. . . ."), and went on to hold that "nothing in [the Act] or the regulations indicates that application of the presumption should turn on the nature of the employer's business rather than the nature and location of the work done." Also, we do not think that the result in *Roberts* would have been different had a state line lain between the mine and the tipple, and we reject N & W's argument.

■ Within N & W's many references to the ICC and the federal regulatory statutes, however, is a simpler and somewhat more persuasive argument. In the midst of its recitation of statutes and regulations, N & W also argues that the interstate commerce aspects of its business, and the fact that the Carbo Run covered thirty-six miles, take Roberson's employment out of the statutory definition of employment "in or around a coal mine" and "in the extraction or preparation of coal." As we noted earlier, however, the ALJ found, and N & W does not dispute, that Roberson spent a significant portion of his workday actually at the mines and preparation plant, and that Roberson was engaged in hauling raw coal between two statutory "mines." Thus, N & W's argument, though undoubtedly valid with respect to many of its employees who haul coal, is without merit as to this particular claimant.

■ Even if Roberson meets the statutory definition of miner, N & W also asserts that it cannot be an operator under the Act. The relevant statute defines operator as "any owner, lessee, or other person who operates, controls, or supervises a coal or other mine *or any independent contractor performing services or construction at such mine.*" 30 U.S.C. § 802(d) (emphasis added). In addition, the applicable regulations provide that "any employer of a miner as defined in § 725.202(a) shall, to the extent appropriate, be considered an operator for the purposes of this part. . . ." 20 C.F.R. § 725.491(a). Because we have concluded that Roberson meets the statutory definition of miner, the regulation defines N & W as an operator if "appropriate."

■ In *Old Dominion Power Co. v. Donovan,* 772 F.2d 92, 96 (4th Cir.1985), we concluded that Congress intended to include within the definition of operator only

---

**4.** N & W has moved to supplement the appellate record in this case to include a letter indicating that Roberson was granted an annuity pursuant to the Railroad Retirement Act based on occupational disability. Although we grant N & W's motion to supplement the record, the letter does not change our analysis for the reasons indicated in the text.

those independent contractors who maintain a continuing presence at a mine. Because Old Dominion's employees normally were present at the mine site only once a month to read the meter, we concluded that Old Dominion was not an operator under the statute. By contrast, the ALJ found here that N & W maintained a continuing presence at the mine site and performed services essential to the preparation of the coal. We conclude that N & W appropriately was considered the responsible operator under the Act.[5]

In conclusion, our holding is necessarily narrow. In the ordinary case a railroad employee engaged in the transportation of coal may well not qualify for benefits under the Act. The demanding tests of function and situs must be met, as they were in this case. After the coal is prepared and reloaded for shipment, a railroad employee would not satisfy the function test. And the possibility of satisfying the situs requirement diminishes as the distance traveled on the rails increases, rendering the employment other than "in or around a coal mine." If a claimant fulfills all the statutory requirements, however, as Roberson has here, we decline to hold that his status as a railroad employee negates his recovery of benefits under the Act to which he otherwise would be entitled.

The order of the Board which has been reviewed is

AFFIRMED.

---

**5.** N & W argues that classifying it as an operator would place the railroad in violation of federal law because railroads are prohibited from transporting commodities that are "manufactured, mined, or produced by the carrier or under its authority." 49 U.S.C. § 10746. However, neither Roberson nor the Director ever has asserted that N & W actually mined or supervised the mining of coal, and considering N & W an operator under the plain language of the Act does not alter what the parties do not dispute. The fact that an employer may be a statutory operator under 30 U.S.C. § 802(d) and 20 C.F.R. § 725.491(a) does not mean that the coal involved was "manufactured, mined or produced" by the employer within the meaning of 49 U.S.C. § 10746.